# Exhibit 1
**Summons & Complaint Served on Defendant Lockheed Martin**



# Notice of Service of Process

KSB / ALL
Transmittal Number: 24940295
Date Processed: 05/19/2022

| | |
|---|---|
| **Primary Contact:** | Dana Bennett- MP 209<br>Lockheed Martin Corporation<br>6801 Rockledge Dr<br>Bethesda, MD 20817-1803 |

| | |
|---|---|
| **Entity:** | Lockheed Martin Corporation<br>Entity ID Number  1895442 |
| **Entity Served:** | Lockheed Martin Corporation d/b/a Lockheed Martin Aeronautics f/k/a Lockheed Martin Tactical Systems (sued Individually |
| **Title of Action:** | Allan Watson vs. 3M Company a/k/a Minnesota Mining & Manufacturing Company |
| **Matter Name/ID:** | Allan Watson vs. 3M Company a/k/a Minnesota Mining & Manufacturing Company (12331771) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Asbestos |
| **Court/Agency:** | Jackson County Circuit Court , MS |
| **Case/Reference No:** | 2022-003.AS |
| **Jurisdiction Served:** | Mississippi |
| **Date Served on CSC:** | 05/13/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Corban Gunn, PLLC<br>228-284-6805 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSISSIPPI**

ALLAN WATSON,                                CIVIL ACTION NO. 2022-003. AS

     Plaintiff,

vs.

3M COMPANY a/k/a MINNESOTA MINING &
MANUFACTURING COMPANY, et al,

     Defendants.

## SUMMONS

TO:    **LOCKHEED MARTIN CORPORATION** d/b/a LOCKHEED MARTIN AERONAUTICS f/k/a
LOCKHEED MARTIN TACTICAL SYSTEMS (sued individually and as successor-in-interest to MARTIN
MARIETTA)
Corporation Service Company
7716 Old Canton Road, Suite C
Madison, MS 39110
or wherever it can be found

### NOTICE TO DEFENDANT

**THE COMPLAINT ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE
IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand deliver a copy of a written response to the Complaint to W. Corban Gunn, Esquire,
P.O. Box 1466, Biloxi, Mississippi 39533, Telephone: (228) 284-6805. Your response must be mailed or delivered
within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment of default will be
entered against you for the money or other things demanded in the Complaint.

    You must also file the original of your response with the Clerk of this Court within a reasonable time
afterward.

    Issued under my hand and the seal of said Court this the 26 day of _April_, 2022.

                                     BQ McCreary

                                     Randy Carney, Jr.
                                     Circuit Clerk
                                     Jackson County Circuit Court
                                     P. O. Box 998
                                     Pascagoula, MS 39568-0998

**PROOF OF SERVICE**
(Process Server)

**To:**   **LOCKHEED MARTIN CORPORATION** d/b/a LOCKHEED MARTIN AERONAUTICS *f/k/a* LOCKHEED MARTIN TACTICAL SYSTEMS (sued individually and as successor-in-interest to MARTIN MARIETTA), Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110, or wherever it can be found.

I, the undersigned process server, served the summons and complaint upon the person or entity named above in the manner set forth below (process server must check proper space and provide all additional information that is requested and pertinent to the mode of service used):

(____ ) **PERSONAL SERVICE.** I personally delivered copies to _____ on the ____ day of _____, 2022, where I found said person(s) in _____ County of the State of _____.

(____ ) **CERTIFIED MAIL SERVICE.** By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served. (Attach signed returned receipt or the return envelope marked "Refused".)

At the time of service, I was at least 18 years of age and not a party to this action.
Fee for service: $_____

Process server must list below: (Please print or type)
Name:_____
Address _____
_____

STATE OF _____
COUNTY OF _____

Personally appeared before me the undersigned authority in and for the State and County aforesaid, the within named, who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service - Summons" are true and correct as therein stated.

_____
Process Server (signature)

SWORN to and subscribed before me this the _____ day of _____, 2022.

_____
NOTARY PUBLIC

My Commission Expires: _____

(SEAL)

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSISSIPPI

**FILED**

ALLAN WATSON,    MASS TORT    CIVIL ACTION NO: 2022-003. AS

Plaintiff,    APR 18 2022    Orders: 18-9000

RANDY CARNEY, CLERK    Asbestos Orders

vs.    BY_____ D.C.    Conventional Filing except

3M COMPANY a/k/a MINNESOTA MINING &    Orders
MANUFACTURING COMPANY;

AIR & LIQUID SYSTEMS CORPORATION (sued as successor-by-merger to
BUFFALO PUMPS, INC.);

AIW-2010 WIND DOWN CORP. (sued individually and as successor-by-merger to
AMERICAN INSULATED WIRE CORPORATION);

ALFA LAVAL, INC. (sued individually and as successor-in-interest to THE DELAVAL
SEPARATOR COMPANY);

AMPHENOL CORPORATION;

AT&T CORP. (sued individually and as successor-in-
interest to BELL LABORATORIES, WESTERN ELECTRIC
COMPANY and TELETYPE CORPORATION);

AURORA PUMP COMPANY;

AUTOZONE, INC.;

A.W. CHESTERTON COMPANY;

BALDOR ELECTRIC COMPANY for its Reliance line of products;

BARRETTS MINERALS INC.;

BAYER CONSUMER CARE HOLDINGS LLC f/k/a BAYER
CONSUMER CARE LLC f/k/a MSD CONSUMER CARE,
INC., for its Dr. Scholl's line of products;

BAYER HEALTHCARE LLC, a subsidiary of BAYER AG, for
its Dr. Scholl's line of products;

BAYER SAMSON II LLC a/k/a and d/b/a DR. SCHOLL'S LLC;

1

**BELDEN INC.** (sued individually and as successor-in-interest to
ALPHA WIRE CORPORATION);

**BLACKMER PUMP COMPANY;**

**BLOCK DRUG COMPANY, INC.** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY);

**BLOCK DRUG CORPORATION** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY);

**BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);

**BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);

**CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION);

**CARRIER CORPORATION;**

**CARRIER GLOBAL CORPORATION;**

**CHATTEM, INC.** a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY);

**CLEAVER-BROOKS, INC.** f/k/a AQUA-CHEM, INC. d/b/a CLEAVER-BROOKS DIVISION (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY);

**COASTAL CHEMICAL CO., L.L.C.;**

**COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY) for its Cashmere Bouquet line of products;

**COMPUDYNE LLC** f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.);

2

**COSMETIC SPECIALTIES, INC.** (sued individually and formerly d/b/a
G&G SPECIALTY PRODUCTS CO.);

**CRANE CO.** (sued individually and as successor-in-interest to DEMING PUMP
COMPANY);

**DAP PRODUCTS, INC.;**

**DAVION INC.** and its HABA DIVISION a/k/a HABA-DAVION for its
DG line of products;

**DCO LLC** f/k/a DANA COMPANIES LLC (sued individually and as
successor-in-interest to VICTOR GASKET MANUFACTURING
COMPANY);

**DOLGENCORP, LLC** for its DG line of products;

**DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC;

**DUREZ CORPORATION;**

**EATON CORPORATION** (sued individually and as successor-in-interest
to CUTLER HAMMER, INC.);

**EATON HYDRAULICS LLC** f/k/a EATON HYDRAULICS, INC.
sued as successor to VICKERS INC.;

**ELLIOTT COMPANY** f/k/a and d/b/a ELLIOTT TURBOMACHINERY COMPANY;

**ERICSSON, INC.** (sued individually and as successor-in-interest to
ANACONDA WIRE & CABLE);

**ESTABROOK MOTOR CO. INC.;**

**EXTECO, INC.** f/k/a THERMO-ELECTRIC CO. INC. (sued as successor to THERMO-
ELECTRIC WIRE & CABLE CO);

**FLOWSERVE US, INC.** (sued as successor to EDWARD VALVE, INC.);

**FMC CORPORATION** (sued individually and as successor-in-interest to PEERLESS
PUMP COMPANY and NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE
APPARATUS COMPANY);

**FORD MOTOR COMPANY;**

3

**FOSTER WHEELER ENERGY CORPORATION;**

**GARDNER DENVER, INC.;**

**GENERAL CABLE INDUSTRIES, INC.** (sued individually and as successor-in-interest to ALCAN CABLE) for its Anaconda and Alcan lines of products;

**GENERAL DYNAMICS CORPORATION** d/b/a GENERAL DYNAMICS ELECTRIC BOAT (sued individually and as successor-in-interest to ELECTRO-DYNAMIC COMPANY);

**GENERAL ELECTRIC COMPANY** (sued individually and as successor-by-merger to RCA CORPORATION and for its former subsidiary, GEC-MARCONI HAZELTINE as successor-in-interest to HAZELTINE CORPORATION);

**THE GORES GROUP, LLC** d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.);

**GOULDS PUMPS LLC** f/k/a GOULDS PUMPS, INCORPORATED;

**HIMMEL MANAGEMENT CO. LLC** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC. (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY);

**HOLLEY PERFORMANCE PRODUCTS, INC.;**

**HOLLINGSWORTH & VOSE COMPANY;**

**HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued individually and as successor-in-interest to BENDIX CORPORATION and BENDIX AVIATION CORPORATION successor-in-interest to BENDIX RADIO CORPORATION);

**HOPEMAN BROTHERS INC.;**

**IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and C. H. WHEELER MANUFACTURING COMPANY);

**INTERNATIONAL PAPER COMPANY;**

**ITT, LLC** f/k/a ITT INC., ITT CORPORATION, and ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to FEDERAL TELEGRAPH AND RADIO COMPANY and FOSTER ENGINEERING COMPANY);

**JOHN CRANE, INC.;**

4

**LAARS HEATING SYSTEMS COMPANY;**

**LOCKHEED MARTIN CORPORATION** d/b/a LOCKHEED MARTIN AERONAUTICS f/k/a LOCKHEED MARTIN TACTICAL SYSTEMS (sued individually and as successor-in-interest to MARTIN MARIETTA);

**LORILLARD LLC** f/k/a LORILLARD TOBACCO COMPANY, a subsidiary of REYNOLDS AMERICAN INC.;

**MERCK & CO., INC.,** for its Dr. Scholl's line of products;

**METROPOLITAN LIFE INSURANCE COMPANY;**

**MORSE TEC LLC** f/k/a BORGWARNER MORSE TEC LLC (sued as successor-by-merger to BORG WARNER CORPORATION);

**MW CUSTOM PAPERS, LLC** as successor-in-interest to THE MEAD CORPORATION;

**NOKIA OF AMERICA CORPORATION** as successor-by-merger to ALCATEL-LUCENT USA, INC. and LUCENT TECHNOLOGIES, INC. (sued individually and as successor-in-interest to WESTERN ELECTRIC COMPANY);

**OCCIDENTAL CHEMICAL CORPORATION** f/k/a HOOKERS CHEMICAL CO. (sued as successor-in-interest to DUREZ CORPORATION);

**THE OKONITE COMPANY, INC.;**

**OLYMPIC WIRE & CABLE CORP.;**

**O'REILLY AUTOMOTIVE STORES, INC.;**

**OSRAM SYLVANIA INC.** (sued individually and as successor-in-interest to GTE SYLVANIA successor-in-interest to PHILCO-FORD);

**PANDUIT CORP.;**

**PERRIGO COMPANY** for its Equate line of products;

**PFIZER INC.;**

**PHELPS DODGE INDUSTRIES, INC.;**

**PHILADELPHIA GEAR CORPORATION** f/k/a PHILADELPHIA GEAR WORKS;

PHILATRON INTERNATIONAL;

PREMIER BRANDS OF AMERICA INC. for its DG line of products;

PRYSMIAN POWER CABLES AND SYSTEMS USA, LLC f/k/a PIRELLI COMMUNICATIONS CABLES AND SYSTEMS USA, LLC;

RAYTHEON COMPANY;

R. J. REYNOLDS TOBACCO COMPANY as successor-by-merger to LORILLARD TOBACCO COMPANY;

ROCKWELL COLLINS, INC., a subsidiary of UNITED TECHNOLOGIES CORPORATION;

RSCC WIRE & CABLE LLC d/b/a ROCKBESTOS SUPRENANT CORPORATION;

R. T. VANDERBILT HOLDING COMPANY, INC. (sued individually and as successor-in-interest to R. T. VANDERBILT COMPANY, INC.);

SCHNEIDER ELECTRIC USA, INC. f/k/a SQUARE D COMPANY;

SCHOLL'S WELLNESS COMPANY LLC;

SIEMENS CORPORATION;

SPECIALTY MINERALS INC. (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.);

SPX CORPORATION (sued individually and as successor-in-interest to KINNEY VACUUM PUMP COMPANY);

STERLING FLUID SYSTEMS (USA), LLC f/k/a PEERLESS PUMP CO.;

SUPERIOR-LIDGERWOOD-MUNDY CORPORATION (sued individually and as successor-in-interest to M.T. DAVIDSON COMPANY);

TACO, INC.;

TE CONNECTIVITY CORPORATION f/k/a TYCO ELECTRONICS CORPORATION for its Raychem brand of products;

THERMO-ELECTRIC COMPANY, INC. (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.);

UNION CARBIDE CORPORATION;

**UNISYS CORPORATION** (sued individually and as successor-in-interest to SPERRY CORPORATION f/k/a SPERRY RAND and WATERBURY TOOL COMPANY);

**VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.);

**VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION;

**VERIZON COMMUNICATIONS INC.** (sued individually and as successor-in-interest to GTE CORPORATION successor-in-interest to PHILCO-FORD CORPORATION);

**VIACOMCBS INC.** f/k/a CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION and as successor-in-interest to BF STURTEVANT);

**VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY);

**VIKING PUMP, INC.;**

**WALMART INC.** for its Equate line of products;

**WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY);

**WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL;

**WHITTAKER CLARK & DANIELS, INC.;**

**THE WILLIAM POWELL COMPANY;** and

**JOHN DOES 1-30,**

Defendants.

## PLAINTIFF'S ORIGINAL COMPLAINT
## JURY TRIAL REQUESTED

Plaintiff ALLAN WATSON, by and through his counsel of record, CORBAN GUNN, PLLC and SIMON GREENSTONE PANATIER, PC, hereby files his Complaint and alleges as follows:

7

## I. PARTIES

1.      Plaintiff, ALLAN WATSON, social security number XXX-XX-3309, is an adult resident of the County of Jackson, State of Mississippi, whose mailing address is 22213 Springfield Road, Moss Point, MS 39562.

2.      In addition to the Defendants listed below, there are Defendants whose identities are presently unknown to Plaintiff. These unknown Defendants are hereby identified as "JOHN DOE" Defendants pursuant to Rule 9(h) of the Mississippi Rules of Civil Procedure. Every allegation in this Complaint is an allegation and a filing as of this date against each "JOHN DOE" Defendant.

3.      Defendant **3M COMPANY** a/k/a MINNESOTA MINING & MANUFACTURING COMPANY was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Minnesota. Defendant **3M COMPANY** a/k/a MINNESOTA MINING & MANUFACTURING COMPANY may be served through its registered agent in Mississippi, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110. At all times material hereto, Defendant **3M COMPANY** a/k/a MINNESOTA MINING & MANUFACTURING COMPANY developed, manufactured, marketed, distributed and/or sold 3M Masks. Furthermore, Defendant **3M COMPANY** a/k/a MINNESOTA MINING & MANUFACTURING COMPANY has and does business in the State of Mississippi.

4.      Defendant **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-by-merger to BUFFALO PUMPS, INC.) was and is a company incorporated under the laws of the State of Pennsylvania with its principal place of business in New York. Defendant **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-

by-merger to BUFFALO PUMPS, INC.) may be served through its registered agent in Pennsylvania, Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110. At all times material hereto, Defendant **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-by-merger to BUFFALO PUMPS, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing Buffalo Pumps. Furthermore, Defendant **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-by-merger to BUFFALO PUMPS, INC.) has and does business in the State of Mississippi.

5.     Defendant **AIW-2010 WIND DOWN CORP.** (sued individually and as successor-by-merger to AMERICAN INSULATED WIRE CORPORATION) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. Defendant **AIW-2010 WIND DOWN CORP.** (sued individually and as successor-by-merger to AMERICAN INSULATED WIRE CORPORATION) may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **AIW-2010 WIND DOWN CORP.** (sued individually and as successor-by-merger to AMERICAN INSULATED WIRE CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing American Wire. Furthermore, Defendant **AIW-2010 WIND DOWN CORP.** (sued individually and as successor-by-merger to AMERICAN INSULATED WIRE CORPORATION) has and does business in the State of Mississippi.

6.     Defendant **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY) was and is a company

9

incorporated under the laws of the State of New Jersey with its principal place of business in Virginia. Defendant **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing DeLaval Pumps and DeLaval Purifiers. Furthermore, Defendant **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY) has and does business in the State of Mississippi.

7.    Defendant **AMPHENOL CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. Defendant **AMPHENOL CORPORATION** may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **AMPHENOL CORPORATION** developed, manufactured, marketed, distributed and/or sold asbestos-containing Amphenol Wire and Amphenol Cable. Furthermore, Defendant **AMPHENOL CORPORATION** has and does business in the State of Mississippi.

8.    Defendant **AT&T CORP.** (sued individually and as successor-in-interest to BELL LABORATORIES, WESTERN ELECTRIC COMPANY and TELETYPE CORPORATION) was and is a company incorporated under the laws of the State of New York with its principal place of business in New Jersey. Defendant **AT&T CORP.** (sued individually and as successor-in-interest to BELL LABORATORIES, WESTERN

10

ELECTRIC COMPANY and TELETYPE CORPORATION) may be served through its registered agent in New York, CT Corporation System, 28 Liberty Street, New York, NY 10005. At all times material hereto, Defendant **AT&T CORP.** (sued individually and as successor-in-interest to BELL LABORATORIES, WESTERN ELECTRIC COMPANY and TELETYPE CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing Western Electric Teletype Machines and Teletype Corporation Teletype Machines. Furthermore, Defendant **AT&T CORP.** (sued individually and as successor-in-interest to BELL LABORATORIES, WESTERN ELECTRIC COMPANY and TELETYPE CORPORATION) has and does business in the State of Mississippi.

9. Defendant **AURORA PUMP COMPANY** was and is a company incorporated under the laws of the State of Minnesota with its principal place of business in Illinois. Defendant **AURORA PUMP COMPANY** may be served through its appointed registered agent for service of process at 6325 Ardrey Kell Road Suite 400, Charlotte, NC 28277. At all times material hereto, Defendant **AURORA PUMP COMPANY** developed, manufactured, marketed, distributed and/or sold asbestos-containing Aurora Pumps. Furthermore, Defendant **AURORA PUMP COMPANY** has and does business in the State of Mississippi.

10. Defendant **AUTOZONE, INC.** was and is a company incorporated under the laws of the State of Nevada with its principal place of business in Tennessee. Defendant **AUTOZONE, INC.** may be served through its registered agent in Nevada, The Corporation Trust Company of Nevada, 701 S. Carson Street, Suite 200, Carson City, NV 89701. At all times material hereto, Defendant **AUTOZONE, INC.** developed,

11

manufactured, marketed, distributed and/or sold asbestos-containing Duralast Brakes and asbestos-containing friction products. Furthermore, Defendant **AUTOZONE, INC.** has and does business in the State of Mississippi.

11.     Defendant **A.W. CHESTERTON COMPANY** was and is a company incorporated under the laws of the State of Massachusetts with its principal place of business in Massachusetts. Defendant **A.W. CHESTERTON COMPANY** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **A.W. CHESTERTON COMPANY** developed, manufactured, marketed, distributed and/or sold asbestos-containing A.W. Chesterton Cloth, A.W. Chesterton Gaskets and A.W. Chesterton Packing. Furthermore, Defendant **A.W. CHESTERTON COMPANY** has and does business in the State of Mississippi.

12.     Defendant **BALDOR ELECTRIC COMPANY** for its Reliance line of products was and is a company incorporated under the laws of the State of Missouri with its principal place of business in Arkansas. Defendant **BALDOR ELECTRIC COMPANY** for its Reliance line of products may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **BALDOR ELECTRIC COMPANY** for its Reliance line of products developed, manufactured, marketed, distributed and/or sold asbestos-containing Reliance Motors. Furthermore, Defendant **BALDOR ELECTRIC COMPANY** for its Reliance line of products has and does business in the State of Mississippi.

13.    Defendant **BARRETTS MINERALS INC.** was and is a company incorporated under the laws of the State of Delaware with its principal places of business in Montana and New York. Defendant **BARRETTS MINERALS INC.** may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **BARRETTS MINERALS INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing talc. Furthermore, Defendant **BARRETTS MINERALS INC.** has and does business in the State of Mississippi.

14.    Defendant **BAYER CONSUMER CARE HOLDINGS LLC** f/k/a BAYER CONSUMER CARE LLC f/k/a MSD CONSUMER CARE, INC., for its Dr. Scholl's line of products, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Tennessee. The sole member of Defendant **BAYER CONSUMER CARE HOLDINGS LLC** f/k/a BAYER CONSUMER CARE LLC f/k/a MSD CONSUMER CARE, INC., for its Dr. Scholl's line of products, is Bayer East Coast LLC, whose sole member is Bayer Healthcare US Funding LLC, a Delaware limited liability company with its principal place of business located in New Jersey, and whose sole member is Bayer US Holding LP, whose sole General Partner is Bayer World Investments B.V., whose sole Limited Partner is Bayer Solution B.V. Bayer World Investments B.V. is a private company with limited liability incorporated under the laws of the Netherlands whose members are Bayer Pharma AG, Bayer US GmbH & Co. KG, and Bayer US II GmbH & Co. KG. Bayer Pharma AG is a German corporation with a principal place of business in Wuppertal, Germany. Bayer US GmbH & Co. KG is a German limited partnership, in which Bayer CropScience AG

13

is the sole and controlling General Partner, and Bayer US IP GmbH is the sole Limited Partner. Bayer CropScience AG is a German corporation with a principal place of business in Monheim am Rhein, Germany. Bayer US II GmbH & Co. KG. is a German limited partnership, in which Bayer Intellectual Property GmbH is the sole and controlling General Partner, and Bayer US IP GmbH is the sole Limited Partner. Bayer Intellectual Property GmbH is a German limited liability company whose sole member is Bayer AG. Bayer AG is a German corporation with a principal place of business in Leverkusen, Germany. Bayer US IP GmbH is a German limited liability company whose sole member is Bayer AG. Bayer AG is a German corporation with a principal place of business in Leverkusen, Germany. Therefore, Defendant **BAYER CONSUMER CARE HOLDINGS LLC** f/k/a BAYER CONSUMER CARE LLC f/k/a MSD CONSUMER CARE, INC., for its Dr. Scholl's line of products, is a citizen of the States of Delaware and New Jersey. Defendant **BAYER CONSUMER CARE HOLDINGS LLC** f/k/a BAYER CONSUMER CARE LLC f/k/a MSD CONSUMER CARE, INC., for its Dr. Scholl's line of products, may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **BAYER CONSUMER CARE HOLDINGS LLC** f/k/a BAYER CONSUMER CARE LLC f/k/a MSD CONSUMER CARE, INC., for its Dr. Scholl's line of products, developed, manufactured, marketed, distributed and/or sold asbestos-containing Dr. Scholl's Foot Powder. Furthermore, Defendant **BAYER CONSUMER CARE HOLDINGS LLC** f/k/a BAYER CONSUMER CARE LLC f/k/a MSD CONSUMER CARE, INC., for its Dr. Scholl's line of products, has and does business in the State of Mississippi.

14

15.    Defendant **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG, for its Dr. Scholl's line of products, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. Defendant **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG, for its Dr. Scholl's line of products' managing members are NippoNex Inc., Bayer Medical Care Inc., Bayer West Coast Corporation, Bayer Essure, Inc., Bayer Consumer Care Holdings LLC, Coppertone LLC (now known as Bayer Samson I LLC), Dr. Scholl's LLC (now known as Bayer Samson II LLC), MiraLAX LLC, and Bayer HealthCare US Funding LLC3. NippoNex Inc. is a Delaware corporation with a principal place of business in the State of New Jersey. Bayer Medical Care Inc. is a Delaware corporation with a principal place of business in the State of Pennsylvania. Bayer West Coast Corporation is a Delaware Corporation with a principal place of business in the State of California. Bayer Essure, Inc. is a Delaware Corporation with a principal place of business in the State of California. Bayer Consumer Care Holdings LLC is a Delaware limited liability company, whose sole member is Bayer East Coast LLC. Bayer East Coast LLC's sole member is Bayer HealthCare US Funding LLC. Coppertone LLC (now known as Bayer Samson I LLC) is a Delaware limited company whose sole member is Bayer HealthCare US Funding LLC. Dr. Scholl's LLC (now known as Bayer Samson II LLC) is a Delaware limited company whose sole member is Bayer HealthCare US Funding LLC. MiraLAX LLC is a Delaware limited liability company whose sole member is Bayer HealthCare US Funding LLC7. Therefore, Defendant **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG, for its Dr. Scholl's line of products, is a resident of the States of Delaware, New Jersey, Pennsylvania, and California. Defendant **BAYER**

15

**HEALTHCARE LLC**, a subsidiary of BAYER AG, for its Dr. Scholl's line of products, may be served through its registered agent in Mississippi, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110.  At all times material hereto, Defendant **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG, for its Dr. Scholl's line of products, developed, manufactured, marketed, distributed and/or sold asbestos-containing Dr. Scholl's Foot Powder.  Furthermore, Defendant **BAYER HEALTHCARE LLC**, a subsidiary of BAYER AG, for its Dr. Scholl's line of products, has and does business in the State of Mississippi.

16.    Defendant **BAYER SAMSON II LLC** a/k/a and d/b/a DR. SCHOLL'S LLC was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey.  Defendant **BAYER SAMSON II LLC** a/k/a and d/b/a DR. SCHOLL'S LLC's sole member is Bayer HealthCare US Funding LLC, a Delaware limited liability company with its principal place of business in New Jersey. Defendant **BAYER SAMSON II LLC** a/k/a and d/b/a DR. SCHOLL'S LLC is therefore a citizen of the States of Delaware and New Jersey. Defendant **BAYER SAMSON II LLC** a/k/a and d/b/a DR. SCHOLL'S LLC may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.  At all times material hereto, Defendant **BAYER SAMSON II LLC** a/k/a and d/b/a DR. SCHOLL'S LLC developed, manufactured, marketed, distributed and/or sold asbestos-containing Dr. Scholl's Foot Powder.  Furthermore, Defendant **BAYER SAMSON II LLC** a/k/a and d/b/a DR. SCHOLL'S LLC has and does business in the State of Mississippi.

16

17.     Defendant **BELDEN INC.** (sued individually and as successor-in-interest to ALPHA WIRE CORPORATION) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Indiana.  Defendant **BELDEN INC.** (sued individually and as successor-in-interest to ALPHA WIRE CORPORATION) may be served through its registered agent in Delaware, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808.  At all times material hereto, Defendant **BELDEN INC.** (sued individually and as successor-in-interest to ALPHA WIRE CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing Beldon Wire, Beldon Cable, Alpha Wire and Alpha Cable.  Furthermore, Defendant **BELDEN INC.** (sued individually and as successor-in-interest to ALPHA WIRE CORPORATION) has and does business in the State of Mississippi.

18.     Defendant **BLACKMER PUMP COMPANY** was and is a company incorporated under the laws of the State of Michigan with its principal place of business in Michigan.  Defendant **BLACKMER PUMP COMPANY** may be served at its principal place of business in Michigan, 1809 Century Avenue SW, Grand Rapids, MI 49503-1530.  At all times material hereto, Defendant **BLACKMER PUMP COMPANY** developed, manufactured, marketed, distributed and/or sold asbestos-containing Blackmer Pumps.  Furthermore, Defendant **BLACKMER PUMP COMPANY** has and does business in the State of Mississippi.

19.     Defendant **BLOCK DRUG COMPANY, INC.** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) was and is a company incorporated under the laws of

17

the State of New Jersey with its principal place of business in New Jersey. Defendant **BLOCK DRUG COMPANY, INC.** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) may be served through its registered agent in New Jersey, Corporation Service Company, Princeton South Corporate Center, Suite 160, 100 Charles Ewing Boulevard, Ewing, NJ 08628. At all times material hereto, Defendant **BLOCK DRUG COMPANY, INC.** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Gold Bond Foot Powder and Gold Bond talcum powder. Furthermore, Defendant **BLOCK DRUG COMPANY, INC.** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) has and does business in the State of Mississippi.

20.    Defendant **BLOCK DRUG CORPORATION** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. Defendant **BLOCK DRUG CORPORATION** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) may be served through its registered agent in New Jersey, Corporation Service Company, Princeton South Corporate Center, Suite 160, 100 Charles Ewing Boulevard, Ewing, NJ 08628. At all times material hereto, Defendant **BLOCK DRUG CORPORATION** (sued individually and as successor-in-interest to THE GOLD BOND

STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Gold Bond Foot Powder and Gold Bond talcum powder. Furthermore, Defendant **BLOCK DRUG CORPORATION** (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) has and does business in the State of Mississippi.

21.    Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing talc. Furthermore, Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has and does business in the State of Mississippi.

19

22.    Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey.  Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is a Delaware limited liability company whose sole member is Brenntag North America, Inc., a Delaware corporation with its principal place of business in the State of Pennsylvania.    Therefore, Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is a citizen of the States of Delaware and Pennsylvania.  Defendant **BRENNTAG SPECIALTIES LLC** may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  At all times material hereto, Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing talc.  Furthermore, Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-

interest to WHITTAKER CLARK & DANIELS, INC.) has and does business in the State of Mississippi.

23.    Defendant **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. Defendant **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.    At all times material hereto, Defendant **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing Cooper-Bessemer Diesel Engines.    Furthermore, Defendant **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION) has and does business in the State of Mississippi.

24.    Defendant **CARRIER CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Florida.    Defendant **CARRIER CORPORATION** may be served through its registered agent in Mississippi, United Agent Group, Inc., 232 Market Street, Suite 1600, Flowood, MS 39232.    At all times material hereto, Defendant **CARRIER**

21

**CORPORATION** developed, manufactured, marketed, distributed and/or sold asbestos-containing Carrier Refrigeration Plants, Carrier Valves, Carrier Water Cooling Chillers, and Carrier Air Conditioning Systems.    Furthermore, Defendant **CARRIER CORPORATION** has and does business in the State of Mississippi.

25.    Defendant **CARRIER GLOBAL CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Florida.  Defendant **CARRIER GLOBAL CORPORATION** may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  At all times material hereto, Defendant **CARRIER GLOBAL CORPORATION** developed, manufactured, marketed, distributed and/or sold asbestos-containing Carrier Refrigeration Plants, Carrier Valves, Carrier Water Cooling Chillers, and Carrier Air Conditioning Systems. Furthermore, Defendant **CARRIER GLOBAL CORPORATION** has and does business in the State of Mississippi.

26.    Defendant **CHATTEM, INC.** a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) was and is a company incorporated under the laws of the State of Tennessee with its principal place of business in Tennessee.  Defendant **CHATTEM, INC.** a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) may be served through its registered agent in Tennessee, Corporation

22

Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312. At all times material hereto, Defendant **CHATTEM, INC.** a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Gold Bond Foot Powder and Gold Bond talcum powder. Furthermore, Defendant **CHATTEM, INC.** a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) has and does business in the State of Mississippi.

27.    Defendant **CLEAVER-BROOKS, INC.** f/k/a AQUA-CHEM, INC. d/b/a CLEAVER-BROOKS DIVISION (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Georgia. Defendant **CLEAVER-BROOKS, INC.** f/k/a AQUA-CHEM, INC. d/b/a CLEAVER-BROOKS DIVISION (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY) may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **CLEAVER-BROOKS, INC.** f/k/a AQUA-CHEM, INC. d/b/a CLEAVER-BROOKS DIVISION (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Cleaver Brooks Boilers, Davis Fuel Oil Heaters, and Davis Evaporators. Furthermore, Defendant **CLEAVER-BROOKS, INC.** f/k/a AQUA-

23

CHEM, INC. d/b/a CLEAVER-BROOKS DIVISION (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY) has and does business in the State of Mississippi.

28.     Defendant **COASTAL CHEMICAL CO., L.L.C.** was and is a limited liability company incorporated under the laws of the State of Louisiana with its principal place of business in Louisiana. The sole managing member of **COASTAL CHEMICAL CO., L.L.C.** is Brenntag North America, Inc., a Delaware corporation with its principal place of business in Pennsylvania. Therefore, Defendant **COASTAL CHEMICAL CO., L.L.C.** is a citizen of the States of Pennsylvania and Delaware. Defendant **COASTAL CHEMICAL CO., L.L.C.** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **COASTAL CHEMICAL CO., L.L.C.** owned and/or controlled Premises where Plaintiff worked.    Furthermore, Defendant **COASTAL CHEMICAL CO., L.L.C.** has and does business in the State of Mississippi.

29.     Defendant **COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY) for its Cashmere Bouquet line of products was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. Defendant **COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY) for its Cashmere Bouquet line of products may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest

to THE MENNEN COMPANY) for its Cashmere Bouquet line of products developed, manufactured, marketed, distributed and/or sold asbestos-containing Cashmere Bouquet talcum powder.    Furthermore, Defendant **COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY) for its Cashmere Bouquet line of products has and does business in the State of Mississippi.

     30.    Defendant **COMPUDYNE LLC** f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) was and is a limited liability company incorporated under the laws of the State of Nevada with its principal place of business in California.    To the best of Plaintiff's knowledge, the managing members of Defendant **COMPUDYNE LLC** f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) are John Marinac who resides in Michigan, William Champlin III who resides in Florida, Catherine Pollard and Amanda Calender who reside in Colorado, and Eric Hattler and Joe Awad who reside in California.    Therefore, Defendant **COMPUDYNE LLC** f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) is a citizen of the States of Michigan, Florida, Colorado and California.    Defendant **COMPUDYNE LLC** f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) may be served through its registered agent in Nevada, Corporation Service Company, 112 N. Curry Street, Carson City, NV 89703. At all times material hereto, Defendant **COMPUDYNE LLC** f/k/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing York Air

Conditioning Systems.    Furthermore, Defendant **COMPUDYNE LLC** f/k/a
COMPUDYNE CORPORATION (sued individually and as successor-in-interest to
YORK SHIPLEY, INC.) has and does business in the State of Mississippi.

  31. Defendant **COSMETIC SPECIALTIES, INC.** (sued individually and
formerly d/b/a G&G SPECIALTY PRODUCTS CO.) was and is a company incorporated
under the laws of the State of New Jersey with its principal place of business in New
Jersey.    Defendant **COSMETIC SPECIALTIES, INC.** (sued individually and formerly
d/b/a G&G SPECIALTY PRODUCTS CO.) may be served through its registered agent
in New Jersey, Ronald W. Grexa, 125 White Horse Pike, Haddon Heights, NJ 08035.  At
all times material hereto, Defendant **COSMETIC SPECIALTIES, INC.** (sued
individually and formerly d/b/a G&G SPECIALTY PRODUCTS CO.) developed,
manufactured, marketed, distributed and/or sold asbestos-containing talc.    Furthermore,
Defendant **COSMETIC SPECIALTIES, INC.** (sued individually and formerly d/b/a
G&G SPECIALTY PRODUCTS CO.) has and does business in the State of Mississippi.

  32. Defendant **CRANE CO.** (sued individually and as successor-in-interest to
DEMING PUMP COMPANY) was and is a company incorporated under the laws of the
State of Delaware with its principal place of business in Connecticut.    Defendant
**CRANE CO.** (sued individually and as successor-in-interest to DEMING PUMP
COMPANY) may be served through its registered agent in Delaware, The Corporation
Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.
At all times material hereto, Defendant **CRANE CO.** (sued individually and as
successor-in-interest to DEMING PUMP COMPANY) developed, manufactured,
marketed, distributed and/or sold asbestos-containing Crane Valves, Crane Pumps, and

26

Demings Pumps.  Furthermore, Defendant **CRANE CO.** (sued individually and as successor-in-interest to DEMING PUMP COMPANY) has and does business in the State of Mississippi.

33.    Defendant **DAP PRODUCTS, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Maryland. Defendant **DAP PRODUCTS, INC.** may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **DAP PRODUCTS, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing DAP Caulk. Furthermore, Defendant **DAP PRODUCTS, INC.** has and does business in the State of Mississippi.

34.    Defendant **DAVION INC.** and its HABA DIVISION a/k/a HABA-DAVION for its DG line of products was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.  Defendant **DAVION INC.** and its HABA DIVISION a/k/a HABA-DAVION for its DG line of products may be served through its registered agent in New Jersey, James Placa, 2 Progress Road, N. Brunswick, NJ 08902.  At all times material hereto, Defendant **DAVION INC.** and its HABA DIVISION a/k/a HABA-DAVION for its DG line of products developed, manufactured, marketed, distributed and/or sold asbestos-containing DG Shower and Bath Powder.  Furthermore, Defendant **DAVION INC.** and its HABA DIVISION a/k/a HABA-DAVION for its DG line of products has and does business in the State of Mississippi.

27

35.     Defendant **DCO LLC** f/k/a DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) was and is a limited liability company incorporated under the laws of the State of Virginia with its principal place of business in New Jersey.  To the best of Plaintiff's knowledge, the managing members of the **DCO LLC** f/k/a DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) are Vicki L. Stringham and Joseph A. Stancati who reside in Perrysburg, OH.  Therefore, Defendant **DCO LLC** f/k/a DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) is a resident of the States of Virginia and Ohio. Defendant **DCO LLC** f/k/a DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) may be served through its registered agent in Virginia, CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060.  At all times material hereto, Defendant **DCO LLC** f/k/a DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Victor Gaskets.  Furthermore, Defendant **DCO LLC** f/k/a DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY) has and does business in the State of Mississippi.

36.     Defendant **DOLGENCORP, LLC** for its DG line of products was and is a limited liability company incorporated under the laws of the State of Kentucky with its principal place of business in Tennessee.    The sole member of Defendant

28

**DOLGENCORP, LLC** for its DG line of products is Dollar General Corporation, a Tennessee corporation with its principal place of business in the State of Tennessee. Therefore, Defendant **DOLGENCORP, LLC** for its DG of products is a citizen of the State of Tennessee. Defendant **DOLGENCORP, LLC** for its DG line of products may be served through its registered agent in Mississippi, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110. At all times material hereto, Defendant **DOLGENCORP, LLC** for its DG line of products developed, manufactured, marketed, distributed and/or sold asbestos-containing DG Shower and Bath Powder. Furthermore, Defendant **DOLGENCORP, LLC** for its DG line of products has and does business in the State of Mississippi.

37.    Defendant **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC was and is a limited liability company incorporated under the laws of the State of Delaware with the principal place of business in Ohio. Defendant **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC's sole member is Bayer HealthCare US Funding LLC, a Delaware limited liability company with its principal place of business located in New Jersey. Therefore, Defendant **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC is a citizen of the States of Delaware and New Jersey. Defendant **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC developed, manufactured, marketed, distributed and/or sold asbestos-containing Dr. Scholl's Foot Powder. Furthermore, Defendant **DR. SCHOLL'S LLC** a/k/a BAYER SAMSON II LLC has and does business in the State of Mississippi.

29

38.    Defendant **DUREZ CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Michigan.  Defendant **DUREZ CORPORATION** may be served through its registered agent in Delaware, National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.   At all times material hereto, Defendant **DUREZ CORPORATION** developed, manufactured, marketed, distributed and/or sold asbestos fibers.  Furthermore, Defendant **DUREZ CORPORATION** has and does business in the State of Mississippi.

39.    Defendant **EATON CORPORATION** (sued individually and as successor-in-interest to CUTLER HAMMER, INC.) was and is a company incorporated under the laws of the State of Ohio with its principal place of business in Ohio. Defendant **EATON CORPORATION** (sued individually and as successor-in-interest to CUTLER HAMMER, INC.) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.  At all times material hereto, Defendant **EATON CORPORATION** (sued individually and as successor-in-interest to CUTLER HAMMER, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing Cutler Hammer electrical products including, but not limited to, Cutler Hammer Electrical Panels, Cutler Hammer Switches, Cutler Hammer Relays and Cutler Hammer Breakers.  Furthermore, Defendant **EATON CORPORATION** (sued individually and as successor-in-interest to CUTLER HAMMER, INC.) has and does business in the State of Mississippi.

40.    Defendant **EATON HYDRAULICS LLC** f/k/a EATON HYDRAULICS, INC. (sued as successor to VICKERS INC.) was and is a limited liability company

30

incorporated under the laws of the State of Delaware with its principal place of business in Ohio. To the best of Plaintiff's knowledge, the managing member of Defendant **EATON HYDRAULICS LLC f/k/a EATON HYDRAULICS, INC.** (sued as successor to VICKERS INC.) is Eaton Corporation, an Ohio corporation with its principal place of business in Ohio. Therefore, Defendant **EATON HYDRAULICS LLC f/k/a EATON HYDRAULICS, INC.** (sued as successor to VICKERS INC.) is a citizen of the State of Ohio. Defendant **EATON HYDRAULICS LLC f/k/a** EATON HYDRAULICS, INC. (sued as successor to VICKERS INC.) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **EATON HYDRAULICS LLC f/k/a** EATON HYDRAULICS, INC. (sued as successor to VICKERS INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing Vickers Pumps. Furthermore, Defendant **EATON HYDRAULICS LLC f/k/a** EATON HYDRAULICS, INC. (sued as successor to VICKERS INC.) has and does business in the State of Mississippi.

41.    Defendant **ELLIOTT COMPANY** f/k/a and d/b/a ELLIOTT TURBOMACHINERY COMPANY was and is a company incorporated under the laws of the State of Delaware with its principal places of business in Pennsylvania and Texas. Defendant **ELLIOTT COMPANY** f/k/a and d/b/a ELLIOTT TURBOMACHINERY COMPANY may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **ELLIOTT COMPANY** f/k/a and d/b/a ELLIOTT TURBOMACHINERY COMPANY manufactured, marketed, distributed and/or sold

31

asbestos-containing Elliott Deaerating Feed Systems, Elliott Water Tanks, and Elliott Condensers. Furthermore, Defendant **ELLIOTT COMPANY** f/k/a and d/b/a ELLIOTT TURBOMACHINERY COMPANY has and does business in the State of Mississippi.

42.     Defendant **ERICSSON, INC.** (sued individually and as successor-in-interest to ANACONDA WIRE & CABLE) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. Defendant **ERICSSON, INC.** (sued individually and as successor-in-interest to ANACONDA WIRE & CABLE) may be served through its registered agent in Mississippi, Capitol Corporate Services, Inc., 248 E. Capitol Street, Suite 840, Jackson, MS 39201. At all times material hereto, Defendant **ERICSSON, INC.** (sued individually and as successor-in-interest to ANACONDA WIRE & CABLE) manufactured, marketed, distributed and/or sold asbestos-containing Anaconda Wire and Anaconda Cable. Furthermore, Defendant **ERICSSON, INC.** (sued individually and as successor-in-interest to ANACONDA WIRE & CABLE) has and does business in the State of Mississippi.

43.     Defendant **ESTABROOK MOTOR CO. INC.** was and is a company incorporated under the laws of the State of Mississippi with its principal place of business in Jackson County, Mississippi. Defendant **ESTABROOK MOTOR CO. INC.** may be served through its registered agent in Mississippi, James M. Estabrook, Jr., 3689 14th Street, Pascagoula, MS 39567. At all times material hereto, Defendant **ESTABROOK MOTOR CO. INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing asbestos-containing friction products. Furthermore, Defendant **ESTABROOK MOTOR CO. INC.** has and does business in the State of Mississippi.

32

44.    Defendant **EXTECO, INC.** f/k/a THERMO-ELECTRIC CO. INC. (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.) was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.  Defendant **EXTECO, INC.** f/k/a THERMO-ELECTRIC CO. INC. (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.) may be served through its attorney's office in New Jersey, Marc S. Gaffrey, Esq., Hoagland, Longo, Moran, Dunst & Dukas, LLP, 40 Paterson Street, New Brunswick, NJ 08903.  At all times material hereto, Defendant **EXTECO, INC.** f/k/a THERMO-ELECTRIC CO. INC. (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.) developed, manufactured, marketed, distributed and/or sold asbestos-containing Thermo-Electric Wire and Thermo-Electric Cable.  Furthermore, Defendant **EXTECO, INC.** f/k/a THERMO-ELECTRIC CO. INC. (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.) has and does business in the State of Mississippi.

45.    Defendant **FLOWSERVE US, INC.** (sued as successor to EDWARD VALVE, INC.) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas.  Defendant **FLOWSERVE US, INC.** (sued as successor to EDWARD VALVE, INC.)  may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.  At all times material hereto, Defendant **FLOWSERVE US, INC.** (sued as successor to EDWARD VALVE, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing Edward Valves.  Furthermore, Defendant **FLOWSERVE US, INC.** (sued as successor to EDWARD VALVE, INC.) has and does business in the State of Mississippi.

33

46.    Defendant **FMC CORPORATION** (sued individually and as successor-in-interest to PEERLESS PUMP COMPANY and NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. Defendant **FMC CORPORATION** (sued individually and as successor-in-interest to PEERLESS PUMP COMPANY and NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.    At all times material hereto, Defendant **FMC CORPORATION** (sued individually and as successor-in-interest to PEERLESS PUMP COMPANY and NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Northern Pumps and Peerless Pumps. Furthermore, Defendant **FMC CORPORATION** (sued individually and as successor-in-interest to PEERLESS PUMP COMPANY and NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) has and does business in the State of Mississippi.

47.    Defendant **FORD MOTOR COMPANY** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Michigan. Defendant **FORD MOTOR COMPANY** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **FORD MOTOR COMPANY** developed, manufactured, marketed, distributed and/or sold asbestos-

34

containing Ford friction products.    Furthermore, Defendant **FORD MOTOR COMPANY** has and does business in the State of Mississippi.

48.    Defendant **FOSTER WHEELER ENERGY CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey.    Defendant **FOSTER WHEELER ENERGY CORPORATION** may be served through its registered agent in Mississippi, United Agent Group, Inc., 232 Market Street, Suite 1600, Flowood, MS 39232.    At all times material hereto, Defendant **FOSTER WHEELER ENERGY CORPORATION** developed, manufactured, marketed, distributed and/or sold asbestos-containing Foster Wheeler Generators.    Furthermore, Defendant **FOSTER WHEELER ENERGY CORPORATION** has and does business in the State of Mississippi.

49.    Defendant **GARDNER DENVER, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois. Defendant **GARDNER DENVER, INC.** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.    At all times material hereto, Defendant **GARDNER DENVER, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing Gardner Denver Compressors and Gardner Denver Pumps.    Furthermore, Defendant **GARDNER DENVER, INC.** has and does business in the State of Mississippi.

50.    Defendant **GENERAL CABLE INDUSTRIES, INC.** (sued individually and as successor-in-interest to ALCAN CABLE) for its Anaconda and Alcan lines of products was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Kentucky.    Defendant **GENERAL CABLE**

35

**INDUSTRIES, INC.** (sued individually and as successor-in-interest to ALCAN CABLE) for its Anaconda and Alcan lines of products may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **GENERAL CABLE INDUSTRIES, INC.** (sued individually and as successor-in-interest to ALCAN CABLE) for its Anaconda and Alcan lines of products developed, manufactured, marketed, distributed and/or sold asbestos-containing Anaconda Wire, Anaconda Cable, and Alcan Wire. Furthermore, Defendant **GENERAL CABLE INDUSTRIES, INC.** (sued individually and as successor-in-interest to ALCAN CABLE) for its Anaconda and Alcan lines of products has and does business in the State of Mississippi.

51.    Defendant **GENERAL DYNAMICS CORPORATION** d/b/a GENERAL DYNAMICS ELECTRIC BOAT (sued individually and as successor-in-interest to ELECTRO-DYNAMIC COMPANY) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Virginia. Defendant **GENERAL DYNAMICS CORPORATION** d/b/a GENERAL DYNAMICS ELECTRIC BOAT (sued individually and as successor-in-interest to ELECTRO-DYNAMIC COMPANY) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **GENERAL DYNAMICS CORPORATION** d/b/a GENERAL DYNAMICS ELECTRIC BOAT (sued individually and as successor-in-interest to ELECTRO-DYNAMIC COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Electro-Dynamic Motors. Furthermore, Defendant **GENERAL DYNAMICS CORPORATION** d/b/a

36

GENERAL DYNAMICS ELECTRIC BOAT (sued individually and as successor-in-interest to ELECTRO-DYNAMIC COMPANY) has and does business in the State of Mississippi.

52.    Defendant **GENERAL ELECTRIC COMPANY** (sued individually and as successor-by-merger to RCA CORPORATION and for its former subsidiary GEC-MARCONI HAZELTINE as successor-in-interest to HAZELTINE CORPORATION) was and is a company incorporated under the laws of the State of New York with its principal place of business in Massachusetts.  Defendant **GENERAL ELECTRIC COMPANY** (sued individually and as successor-by-merger to RCA CORPORATION and for its former subsidiary GEC-MARCONI HAZELTINE as successor-in-interest to HAZELTINE CORPORATION) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **GENERAL ELECTRIC COMPANY** (sued individually and as successor-by-merger to RCA CORPORATION and for its former subsidiary GEC-MARCONI HAZELTINE as successor-in-interest to HAZELTINE CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing General Electric Turbines, General Electric Pumps, General Electric Motors, General Electric Blowers, General Electric Transformers, General Electric Electrical Panels, General Electric Switches, General Electric Relays, General Electric Breakers, General Electric Consoles, General Electric Wire, General Electric Cable, RCA Radios, RCA Receivers, Marconi Radios, and Marconi Receivers. Furthermore, Defendant **GENERAL ELECTRIC COMPANY** (sued individually and as successor-by-merger to RCA CORPORATION and for its former subsidiar, GEC-

MARCONI HAZELTINE as successor-in-interest to HAZELTINE CORPORATION) has and does business in the State of Mississippi.

53.    Defendant **THE GORES GROUP, LLC** d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) was and is a limited liability company incorporated under the laws of the State of Delaware with its principal places of business in Colorado and California. Plaintiff has not been able to determine the managing members of Defendant **THE GORES GROUP, LLC** d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.). Defendant **THE GORES GROUP, LLC** d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) may be served through its registered agent in Delaware, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808. At all times material hereto, Defendant **THE GORES GROUP, LLC** d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing York Air Conditioning Systems. Furthermore, Defendant **THE GORES GROUP, LLC** d/b/a COMPUDYNE CORPORATION (sued individually and as successor-in-interest to YORK SHIPLEY, INC.) has and does business in the State of Mississippi.

54.    Defendant **GOULDS PUMPS LLC** f/k/a GOULDS PUMPS, INCORPORATED was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in New York. To the best of Plaintiff's knowledge, the managing members of Defendant **GOULDS PUMPS LLC**

f/k/a GOULDS PUMPS, INCORPORATED are John Capela, Craig E. Johnson, and Mary Beth Gustafsson who reside in New York.   Therefore, Defendant **GOULDS PUMPS LLC** f/k/a GOULDS PUMPS, INCORPORATED is a citizen of the State of New York.   Defendant **GOULDS PUMPS LLC** f/k/a GOULDS PUMPS, INCORPORATED may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  At all times material hereto, Defendant **GOULDS PUMPS LLC** f/k/a GOULDS PUMPS, INCORPORATED developed, manufactured, marketed, distributed and/or sold asbestos-containing Goulds Pumps.   Furthermore, Defendant **GOULDS PUMPS LLC** f/k/a GOULDS PUMPS, INCORPORATED has and does business in the State of Mississippi.

55.    Defendant **HIMMEL MANAGEMENT CO. LLC** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC. (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) was and is a limited liability company incorporated under the laws of the State of Florida with its principal place of business in Florida.  Defendant **HIMMEL MANAGEMENT CO. LLC** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC. (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) sole member is Jeffrey Himmel, a citizen of the State of Florida. Defendant **HIMMEL MANAGEMENT CO. LLC** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC. (sued individually and as successor-in-interest

39

to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) is therefore a citizen of the State of Florida. Defendant **HIMMEL MANAGEMENT CO. LLC** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC. (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) may be served through its registered agent in Florida, Jeffrey S. Himmel, c/o Violetas, 221 Miracle Mile, Coral Gables, FL 33134. At all times material hereto, Defendant **HIMMEL MANAGEMENT CO. LLC** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC. (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Gold Bond Foot Powder and Gold Bond talcum powder. Furthermore, Defendant **HIMMEL MANAGEMENT CO. LLC** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC. (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY) has and does business in the State of Mississippi.

56.    Defendant **HOLLEY PERFORMANCE PRODUCTS, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Kentucky. Defendant **HOLLEY PERFORMANCE PRODUCTS, INC.** may be served through its registered agent in Delaware, Corporation Service Company,

251 Little Falls Drive, Wilmington, DE 19808.  At all times material hereto, Defendant **HOLLEY PERFORMANCE PRODUCTS, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing Holley Carburetors.  Furthermore, Defendant **HOLLEY PERFORMANCE PRODUCTS, INC.** has and does business in the State of Mississippi.

57.    Defendant **HOLLINGSWORTH & VOSE COMPANY** was and is a company incorporated under the laws of the State of Massachusetts with its principal place of business in Massachusetts.  Defendant **HOLLINGSWORTH & VOSE COMPANY** may be served through its registered agent in Massachusetts, Deirdre M. Murphy, 112 Washington Street, East Walpole, MA 02032-1008.  At all times material hereto, Defendant **HOLLINGSWORTH & VOSE COMPANY** developed, manufactured, marketed, distributed and/or sold asbestos-containing crocidolite paper used in Kent Cigarettes and asbestos-containing gasket paper.  Furthermore, Defendant **HOLLINGSWORTH & VOSE COMPANY** has and does business in the State of Mississippi.

58.    Defendant **HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued individually and as successor-in-interest to BENDIX CORPORATION and BENDIX AVIATION CORPORATION successor-in-interest to BENDIX RADIO CORPORATION) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in North Carolina. Defendant **HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued individually and as successor-in-interest to BENDIX CORPORATION and BENDIX AVIATION CORPORATION successor-in-interest to BENDIX RADIO

41

CORPORATION) may be served through its registered agent in Mississippi, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110. At all times material hereto, Defendant **HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued individually and as successor-in-interest to BENDIX CORPORATION and BENDIX AVIATION CORPORATION successor-in-interest to BENDIX RADIO CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing Bendix Brakes, asbestos-containing friction products, Bendix Radios, and Bendix Receivers. Furthermore, Defendant **HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued individually and as successor-in-interest to BENDIX CORPORATION and BENDIX AVIATION CORPORATION successor-in-interest to BENDIX RADIO CORPORATION) has and does business in the State of Mississippi.

59.    Defendant **HOPEMAN BROTHERS INC.** was and is a company incorporated under the laws of the State of Virginia with its principal place of business in Virginia. Defendant **HOPEMAN BROTHERS INC.** may be served through its registered agent in Virginia, CT Corporation Service, 4701 Cox Road, Suite 285, Glen Allen, VA 23060. At all times material hereto, Defendant **HOPEMAN BROTHERS INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing Marinite Board and Micarta Board. Furthermore, Defendant **HOPEMAN BROTHERS INC.** has and does business in the State of Mississippi.

60.    Defendant **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and C. H. WHEELER MANUFACTURING COMPANY) was and is a company incorporated under the laws of

42

the State of Delaware with its principal places of business in New Jersey and North Carolina. Defendant **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and C. H. WHEELER MANUFACTURING COMPANY) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and C. H. WHEELER MANUFACTURING COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing DeLaval Pumps, Delaval Turbines, DeLaval Generators, DeLaval Purifiers, C. H. Wheeler Air Ejectors, C. H. Wheeler Tanks, and C. H. Wheeler Condensers. Furthermore, Defendant **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and C. H. WHEELER MANUFACTURING COMPANY) has and does business in the State of Mississippi.

61. Defendant **INTERNATIONAL PAPER COMPANY** was and is a company incorporated under the laws of the State of New York with its principal place of business in Tennessee. Defendant **INTERNATIONAL PAPER COMPANY** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **INTERNATIONAL PAPER COMPANY** owned and/or controlled Premises where Plaintiff worked. Furthermore, Defendant **INTERNATIONAL PAPER COMPANY** has and does business in the State of Mississippi.

62. Defendant **ITT, LLC** f/k/a ITT INC., ITT CORPORATION, and ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to FEDERAL

43

TELEGRAPH AND RADIO COMPANY and FOSTER ENGINEERING COMPANY) was and is a limited liability company incorporated under the laws of the State of Indiana with its principal place of business in New York. The managing member of Defendant **ITT, LLC** f/k/a ITT INC., ITT CORPORATION, and ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to FEDERAL TELEGRAPH AND RADIO COMPANY and FOSTER ENGINEERING COMPANY) is ITT Inc., an Indiana corporation with its principal place of business in New York. Therefore, Defendant **ITT, LLC** f/k/a ITT INC., ITT CORPORATION, and ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to FEDERAL TELEGRAPH AND RADIO COMPANY and FOSTER ENGINEERING COMPANY) is a citizen of the States of Indiana and New York. Defendant **ITT, LLC** f/k/a ITT INC., ITT CORPORATION, and ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to FEDERAL TELEGRAPH AND RADIO COMPANY and FOSTER ENGINEERING COMPANY) may be served through its registered agent in Indiana, CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN 46204. At all times material hereto, Defendant **ITT, LLC** f/k/a ITT INC., ITT CORPORATION, and ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to FEDERAL TELEGRAPH AND RADIO COMPANY and FOSTER ENGINEERING COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Federal Telegraph and Radio Radios, Federal Telegraph and Radio Receivers, and Foster Valves. Furthermore, Defendant **ITT, LLC** f/k/a ITT INC., ITT CORPORATION, and ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to FEDERAL TELEGRAPH AND RADIO COMPANY) has and does business in the State of Mississippi.

44

63.    Defendant **JOHN CRANE, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois. Defendant **JOHN CRANE, INC.** may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **JOHN CRANE, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing John Crane Gaskets and John Crane Packing. Furthermore, Defendant **JOHN CRANE, INC.** has and does business in the State of Mississippi.

64.    Defendant **LAARS HEATING SYSTEMS COMPANY** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Hampshire. Defendant **LAARS HEATING SYSTEMS COMPANY** may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **LAARS HEATING SYSTEMS COMPANY** developed, manufactured, marketed, distributed and/or sold asbestos-containing Teledyne Laars Boilers. Furthermore, Defendant **LAARS HEATING SYSTEMS COMPANY** has and does business in the State of Mississippi.

65.    Defendant **LOCKHEED MARTIN CORPORATION** d/b/a LOCKHEED MARTIN AERONAUTICS f/k/a LOCKHEED MARTIN TACTICAL SYSTEMS (sued individually and as successor-in-interest to MARTIN MARIETTA) was and is a company incorporated under the laws of the State of Maryland with its principal place of business in Maryland. Defendant **LOCKHEED MARTIN CORPORATION** d/b/a LOCKHEED MARTIN AERONAUTICS f/k/a LOCKHEED

45

MARTIN TACTICAL SYSTEMS (sued individually and as successor-in-interest to MARTIN MARIETTA) may be served through its registered agent in Mississippi, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110. At all times material hereto, Defendant **LOCKHEED MARTIN CORPORATION** d/b/a LOCKHEED MARTIN AERONAUTICS f/k/a LOCKHEED MARTIN TACTICAL SYSTEMS (sued individually and as successor-in-interest to MARTIN MARIETTA) developed, manufactured, marketed, distributed and/or sold asbestos-containing Martin Marietta Electronic Missile Systems. Furthermore, Defendant **LOCKHEED MARTIN CORPORATION** d/b/a LOCKHEED MARTIN AERONAUTICS f/k/a LOCKHEED MARTIN TACTICAL SYSTEMS (sued individually and as successor-in-interest to MARTIN MARIETTA) has and does business in the State of Mississippi.

66.    Defendant **LORILLARD LLC** f/k/a LORILLARD TOBACCO COMPANY, a subsidiary of REYNOLDS AMERICAN INC., was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in North Carolina. To the best of Plaintiff's knowledge, the managing members of Defendant **LORILLARD LLC** f/k/a LORILLARD TOBACCO COMPANY, a subsidiary of REYNOLDS AMERICAN INC., are John A. Whitener, Adin Trbonja, and J. Jeffrey Raborn, residents of North Carolina, and/or Reynolds American Inc., a North Carolina corporation with its principal place of business in North Carolina, and/or R.J. Reynolds Tobacco Company, as successor-by-merger to Lorillard Tobacco Company, a North Carolina Corporation with its principal place of business in North Carolina. Defendant **LORILLARD LLC** f/k/a LORILLARD TOBACCO COMPANY, a subsidiary of REYNOLDS AMERICAN INC., is therefore a citizen of the

46

State of North Carolina. Defendant **LORILLARD LLC** f/k/a LORILLARD TOBACCO COMPANY, a subsidiary of REYNOLDS AMERICAN INC. may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **LORILLARD LLC** f/k/a LORILLARD TOBACCO COMPANY, a subsidiary of REYNOLDS AMERICAN INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing Kent Micronite filtered cigarettes. Furthermore, Defendant **LORILLARD LLC** f/k/a LORILLARD TOBACCO COMPANY, a subsidiary of REYNOLDS AMERICAN INC. has and does business in the State of Mississippi.

     67.    Defendant **MERCK & CO., INC.**, for its Dr. Scholl's line of products, was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. Defendant **MERCK & CO., INC.**, for its Dr. Scholl's line of products, may be served through its registered agent in New Jersey, CT Corporation System, 820 Bear Tavern Road, W. Trenton, NJ 08628. At all times material hereto, Defendant **MERCK & CO., INC.**, for its Dr. Scholl's line of products, developed, manufactured, marketed, distributed and/or sold asbestos-containing Dr. Scholl's Foot Powder. Furthermore, Defendant **MERCK & CO., INC.**, for its Dr. Scholl's line of products, has and does business in the State of Mississippi.

     68.    Defendant **METROPOLITAN LIFE INSURANCE COMPANY** was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. Defendant **METROPOLITAN LIFE INSURANCE COMPANY** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material

47

hereto, **METROPOLITAN LIFE INSURANCE COMPANY** conspired with other asbestos suppliers and asbestos-containing product and/or equipment manufacturers to mislead the public as to the hazards of asbestos.    Furthermore, Defendant **METROPOLITAN LIFE INSURANCE COMPANY** has and does business in the State of Mississippi.

69.    Defendant **MORSE TEC LLC** f/k/a BORGWARNER MORSE TEC LLC (sued as successor-by-merger to BORG WARNER CORPORATION) was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in New York. The managing member of Defendant **MORSE TEC LLC** f/k/a BORGWARNER MORSE TEC LLC (sued as successor-by-merger to BORG WARNER CORPORATION) is Borgwarner Inc., a Delaware corporation with its principal place of business in Michigan. Therefore, Defendant **MORSE TEC LLC** f/k/a BORGWARNER MORSE TEC LLC (sued as successor-by-merger to BORG WARNER CORPORATION) is a resident of the States of Delaware and Michigan. Defendant **MORSE TEC LLC** f/k/a BORGWARNER MORSE TEC LLC (sued as successor-by-merger to BORG WARNER CORPORATION) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **MORSE TEC LLC** f/k/a BORGWARNER MORSE TEC LLC (sued as successor-by-merger to BORG WARNER CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing Borg Warner Carburetor Kits and Borg Warner Clutches. Furthermore, Defendant **MORSE TEC LLC** f/k/a BORGWARNER MORSE TEC LLC

48

(sued as successor-by-merger to BORG WARNER CORPORATION) has and does business in the State of Mississippi.

70.    Defendant **MW CUSTOM PAPERS, LLC** as successor-in-interest to THE MEAD CORPORATION was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Georgia. To the best of Plaintiff's knowledge, the managing members of Defendant **MW CUSTOM PAPERS, LLC** as successor-in-interest to THE MEAD CORPORATION are Westrock Corporation, a Delaware corporation with its principal place of business in Georgia, and/or Jeffrey A. Yost, David B. Sharkey, and Robert B. McIntosh who reside in Georgia. Defendant **MW CUSTOM PAPERS, LLC** as successor-in-interest to THE MEAD CORPORATION is therefore a citizen of the States of Delaware and Georgia. Defendant **MW CUSTOM PAPERS, LLC** as successor-in-interest to THE MEAD CORPORATION may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **MW CUSTOM PAPERS, LLC** as successor-in-interest to THE MEAD CORPORATION developed, manufactured, marketed, distributed and/or sold asbestos-containing friction paper. Furthermore, Defendant **MW CUSTOM PAPERS, LLC** as successor-in-interest to THE MEAD CORPORATION has and does business in the State of Mississippi.

71.    Defendant **NOKIA OF AMERICA CORPORATION** as successor-by-merger to ALCATEL-LUCENT USA, INC. and LUCENT TECHNOLOGIES, INC. (sued individually and as successor-in-interest to WESTERN ELECTRIC COMPANY) was and is a company incorporated under the laws of the State of Delaware with its

49

principal place of business in New Jersey. Defendant **NOKIA OF AMERICA CORPORATION** as successor-by-merger to ALCATEL-LUCENT USA, INC. and LUCENT TECHNOLOGIES, INC. (sued individually and as successor-in-interest to WESTERN ELECTRIC COMPANY) may be served through its registered agent in Mississippi, The Prentice-Hall Corporation System, Inc., 7716 Old Canton Road, Suite C, Madison, MS 39110. At all times material hereto, Defendant **NOKIA OF AMERICA CORPORATION** as successor-by-merger to ALCATEL-LUCENT USA, INC. and LUCENT TECHNOLOGIES, INC. (sued individually and as successor-in-interest to WESTERN ELECTRIC COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Western Electric Electrical Panels. Furthermore, Defendant **NOKIA OF AMERICA CORPORATION** as successor-by-merger to ALCATEL-LUCENT USA, INC. and LUCENT TECHNOLOGIES, INC. (sued individually and as successor-in-interest to WESTERN ELECTRIC COMPANY) has and does business in the State of Mississippi.

72.    Defendant **OCCIDENTAL CHEMICAL CORPORATION** f/k/a HOOKERS CHEMICAL CO. (sued as successor-in-interest to DUREZ CORPORATION) was and is a company incorporated under the laws of the State of New York with its principal place of business in Texas. Defendant **OCCIDENTAL CHEMICAL CORPORATION** f/k/a HOOKERS CHEMICAL CO. (sued as successor-in-interest to DUREZ CORPORATION) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **OCCIDENTAL CHEMICAL CORPORATION** f/k/a HOOKERS CHEMICAL CO. (sued as successor-in-interest to

DUREZ CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos fibers. Furthermore, Defendant **OCCIDENTAL CHEMICAL CORPORATION** f/k/a HOOKERS CHEMICAL CO. (sued as successor-in-interest to DUREZ CORPORATION) has and does business in the State of Mississippi.

73. Defendant **THE OKONITE COMPANY, INC.** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. Defendant **THE OKONITE COMPANY, INC.** may be served through its registered agent in New Jersey, David Sokira, The Okonite Company, Inc., 102 Hilltop Road, Ramsey, NJ 07446. At all times material hereto, Defendant **THE OKONITE COMPANY, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing Okonite Wire and Okonite Cable. Furthermore, Defendant **THE OKONITE COMPANY, INC.** has and does business in the State of Mississippi.

74. Defendant **OLYMPIC WIRE & CABLE CORP.** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. Defendant **OLYMPIC WIRE & CABLE CORP.** may be served through its registered agent in New Jersey, Robert Burke, 7 Madison Road, Fairfield, NJ 07004. At all times material hereto, Defendant **OLYMPIC WIRE & CABLE CORP.** developed, manufactured, marketed, distributed and/or sold asbestos-containing Olympic Wire and Olympic Cable. Furthermore, Defendant **OLYMPIC WIRE & CABLE CORP.** has and does business in the State of Mississippi.

75. Defendant **O'REILLY AUTOMOTIVE STORES, INC.** was and is a company incorporated under the laws of the State of Missouri with its principal place of business in Missouri. Defendant **O'REILLY AUTOMOTIVE STORES, INC.** may be

51

served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **O'REILLY AUTOMOTIVE STORES, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing friction products. Furthermore, Defendant **O'REILLY AUTOMOTIVE STORES, INC.** has and does business in the State of Mississippi.

76.    Defendant **OSRAM SYLVANIA INC.** (sued individually and as successor-in-interest to GTE SYLVANIA successor-in-interest to PHILCO-FORD) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Massachusetts. Defendant **OSRAM SYLVANIA INC.** (sued individually and as successor-in-interest to GTE SYLVANIA successor-in-interest to PHILCO-FORD) may be served through its registered agent in Mississippi, Corporate Creations Network, Inc., 232 Market Street, Suite 1600, Flowood, MS 39232. At all times material hereto, Defendant **OSRAM SYLVANIA INC.** (sued individually and as successor-in-interest to GTE SYLVANIA successor-in-interest to PHILCO-FORD) developed, manufactured, marketed, distributed and/or sold asbestos-containing Philco Radios, Philco Receivers, Sylvania Radios, and Sylvania Receivers. Furthermore, Defendant **OSRAM SYLVANIA INC.** (sued individually and as successor-in-interest to GTE SYLVANIA successor-in-interest to PHILCO-FORD) has and does business in the State of Mississippi.

77.    Defendant **PANDUIT CORP.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois. Defendant **PANDUIT CORP.** may be served through its registered agent in Delaware,

52

Corporation Service Company, 251 Little Falls Road, Wilmington, DE 19808. At all times material hereto, Defendant **PANDUIT CORP.** developed, manufactured, marketed, distributed and/or sold asbestos-containing Panduit Wire and Panduit Cable. Furthermore, Defendant **PANDUIT CORP.** has and does business in the State of Mississippi.

78.    Defendant **PERRIGO COMPANY** for its Equate line of products was and is a company incorporated under the laws of the State of Michigan with its principal place of business in Michigan. Defendant **PERRIGO COMPANY** for its Equate line of products may be served through its registered agent in Michigan, CSC-Lawyers Incorporating Service Company, 601 Abbot Road, East Lansing, MI 48823. At all times material hereto, Defendant **PERRIGO COMPANY** for its Equate line of products developed, manufactured, marketed, distributed and/or sold asbestos-containing Equate talcum powder. Furthermore, Defendant **PERRIGO COMPANY** for its Equate line of products has and does business in the State of Mississippi.

79.    Defendant **PFIZER INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. Defendant **PFIZER INC.** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **PFIZER INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing talc. Furthermore, Defendant **PFIZER INC.** has and does business in the State of Mississippi.

80.    Defendant **PHELPS DODGE INDUSTRIES, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of

53

business in Arizona. Defendant **PHELPS DODGE INDUSTRIES, INC.** may be served through its registered agent in Delaware, Registered Agent Solutions, Inc., 838 Walker Road, Suite 21-2, Dover, DE 19904. At all times material hereto, Defendant **PHELPS DODGE INDUSTRIES, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing Phelps Dodge Wire and Phelps Dodge Cable. Furthermore, Defendant **PHELPS DODGE INDUSTRIES, INC.** has and does business in the State of Mississippi.

81. Defendant **PHILADELPHIA GEAR CORPORATION** f/k/a PHILADELPHIA GEAR WORKS was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. Defendant **PHILADELPHIA GEAR CORPORATION** f/k/a PHILADELPHIA GEAR WORKS may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **PHILADELPHIA GEAR CORPORATION** f/k/a PHILADELPHIA GEAR WORKS developed, manufactured, marketed, distributed and/or sold asbestos-containing Philadelphia Gear Pumps. Furthermore, Defendant **PHILADELPHIA GEAR CORPORATION** f/k/a PHILADELPHIA GEAR WORKS has and does business in the State of Mississippi.

82. Defendant **PHILATRON INTERNATIONAL** was and is a company incorporated under the laws of the State of California with its principal place of business in California. Defendant **PHILATRON INTERNATIONAL** may be served through its registered agent in California, Philip M. Ramos, Jr., 15315 Cornet Avenue, Santa Fe Springs, CA 90670. At all times material hereto, Defendant **PHILATRON**

54

**INTERNATIONAL** developed, manufactured, marketed, distributed and/or sold asbestos-containing Philatron Wire and Philatron Cable. Furthermore, Defendant **PHILATRON INTERNATIONAL** has and does business in the State of Mississippi.

83. Defendant **PREMIER BRANDS OF AMERICA INC.** for its DG line of products was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. Defendant **PREMIER BRANDS OF AMERICA INC.** for its DG line of products may be served through its principal place of business in New York, 170 Hamilton Ave #201, White Plains, NY 10601. At all times material hereto, Defendant **PREMIER BRANDS OF AMERICA INC.** for its DG line of products developed, manufactured, marketed, distributed and/or sold asbestos-containing DG Shower and Bath Powder. Furthermore, Defendant **PREMIER BRANDS OF AMERICA INC.** for its DG line of products has and does business in the State of Mississippi.

84. Defendant **PRYSMIAN CABLES AND SYSTEMS USA, LLC** f/k/a PIRELLI COMMUNICATIONS CABLES AND SYSTEMS USA, LLC was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in South Carolina. Defendant **PRYSMIAN CABLES AND SYSTEMS USA, LLC** f/k/a PIRELLI COMMUNICATIONS CABLES AND SYSTEMS USA, LLC may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **PRYSMIAN CABLES AND SYSTEMS USA, LLC** f/k/a PIRELLI COMMUNICATIONS CABLES AND SYSTEMS USA, LLC developed, manufactured, marketed, distributed and/or sold asbestos-containing Pirelli Cables,

55

Anaconda Wire, and Anaconda Cable.  Furthermore, Defendant **PRYSMIAN CABLES AND SYSTEMS USA, LLC** f/k/a PIRELLI COMMUNICATIONS CABLES AND SYSTEMS USA, LLC has and does business in the State of Mississippi.

85.    Defendant **RAYTHEON COMPANY** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Massachusetts.  Defendant **RAYTHEON COMPANY** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.  At all times material hereto, Defendant **RAYTHEON COMPANY** developed, manufactured, marketed, distributed and/or sold asbestos-containing Raytheon Radios, Raytheon Receivers, and Raytheon Sonar Machines. Furthermore, Defendant **RAYTHEON COMPANY** has and does business in the State of Mississippi.

86.    Defendant **R. J. REYNOLDS TOBACCO COMPANY** as successor-by-merger to LORILLARD TOBACCO COMPANY was and is a company incorporated under the laws of the State of North Carolina with its principal place of business in North Carolina.  Defendant **R. J. REYNOLDS TOBACCO COMPANY** as successor-by-merger to LORILLARD TOBACCO COMPANY may be served through its registered agent in Mississippi, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110.  At all times material hereto, Defendant **R. J. REYNOLDS TOBACCO COMPANY**, as successor-by-merger to LORILLARD TOBACCO COMPANY developed, manufactured, marketed, distributed and/or sold asbestos-containing Kent Micronite filtered cigarettes.   Furthermore, Defendant **R. J.**

56

**REYNOLDS TOBACCO COMPANY** as successor-by-merger to LORILLARD TOBACCO COMPANY has and does business in the State of Mississippi.

87.    Defendant **ROCKWELL COLLINS, INC.**, a subsidiary of UNITED TECHNOLOGIES CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Iowa. Defendant **ROCKWELL COLLINS, INC.**, a subsidiary of UNITED TECHNOLOGIES CORPORATION, may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **ROCKWELL COLLINS, INC.**, a subsidiary of UNITED TECHNOLOGIES CORPORATION, developed, manufactured, marketed, distributed and/or sold asbestos-containing Collins Radios and Collins Receivers. Furthermore, Defendant **ROCKWELL COLLINS, INC.**, a subsidiary of UNITED TECHNOLOGIES CORPORATION, has and does business in the State of Mississippi.

88.    Defendant **RSCC WIRE & CABLE LLC** d/b/a ROCKBESTOS SUPRENANT CORPORATION was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. The managing members of Defendant **RSCC WIRE & CABLE LLC** d/b/a ROCKBESTOS SUPRENANT CORPORATION are Frederick Schwelm, Gary Gagnon, Wayne Yakich, Christopher Venice, and John R. Regalbuti, Jr., who reside in Connecticut.    Therefore, Defendant **RSCC WIRE & CABLE LLC** d/b/a ROCKBESTOS SUPRENANT CORPORATION is a citizen of the State of Connecticut. Defendant **RSCC WIRE & CABLE LLC** d/b/a ROCKBESTOS SUPRENANT CORPORATION may be served through its registered agent in Delaware, Corporation

Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **RSCC WIRE & CABLE LLC** d/b/a ROCKBESTOS SUPRENANT CORPORATION developed, manufactured, marketed, distributed and/or sold asbestos-containing Rockbestos Wire and Rockbestos Cable. Furthermore, Defendant **RSCC WIRE & CABLE LLC** d/b/a ROCKBESTOS SUPRENANT CORPORATION has and does business in the State of Mississippi.

89.    Defendant **R. T. VANDERBILT HOLDING COMPANY, INC.** (sued individually and as successor-in-interest to R. T. VANDERBILT COMPANY, INC.) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. Defendant **R. T. VANDERBILT HOLDING COMPANY, INC.** (sued individually and as successor-in-interest to R. T. VANDERBILT COMPANY, INC.) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **R. T. VANDERBILT HOLDING COMPANY, INC.** (sued individually and as successor-in-interest to R. T. VANDERBILT COMPANY, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing talc. Furthermore, Defendant **R. T. VANDERBILT HOLDING COMPANY, INC.** (sued individually and as successor-in-interest to R. T. VANDERBILT COMPANY, INC.) has and does business in the State of Mississippi.

90.    Defendant **SCHNEIDER ELECTRIC USA, INC.** f/k/a SQUARE D COMPANY was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Massachusetts. Defendant **SCHNEIDER**

58

ELECTRIC USA, INC. f/k/a SQUARE D COMPANY may be served through its registered agent in Mississippi, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110. At all times material hereto, Defendant **SCHNEIDER ELECTRIC USA, INC.** f/k/a SQUARE D COMPANY developed, manufactured, marketed, distributed and/or sold asbestos-containing Square D Electrical Components including, but not limited to, Square D Electrical Panels, Square D Switches, Square D Relays, and Square D Breakers. Furthermore, Defendant **SCHNEIDER ELECTRIC USA, INC.** f/k/a SQUARE D COMPANY has and does business in the State of Mississippi.

91.    Defendant **SCHOLL'S WELLNESS COMPANY LLC** was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in New York. Defendant **SCHOLL'S WELLNESS COMPANY LLC** is a Delaware limited liability company whose sole member is Yellow Wood Partners, LLC, a Delaware limited liability company with its principal place of business in Massachusetts. To the best of Plaintiff's knowledge, the managing members of Yellow Wood Partners, LLC, are Dana L. Schmaltz, Tad Yanagi, and Tracy Pizzi who reside in Massachusetts. Therefore, Defendant **SCHOLL'S WELLNESS COMPANY LLC** is a citizen of the States of Delaware and Massachusetts. Defendant **SCHOLL'S WELLNESS COMPANY LLC** may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **SCHOLL'S WELLNESS COMPANY LLC** developed, manufactured, marketed, distributed and/or

59

sold asbestos-containing Dr. Scholl's Foot Powder. Furthermore, Defendant **SCHOLL'S WELLNESS COMPANY LLC** has and does business in the State of Mississippi.

92.     Defendant **SIEMENS CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in the District of Washington, D.C. Defendant **SIEMENS CORPORATION** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **SIEMENS CORPORATION** developed, manufactured, marketed, distributed and/or sold asbestos-containing Siemens Control Panels and Seimens Switchboards. Furthermore, Defendant **SIEMENS CORPORATION** has and does business in the State of Mississippi.

93.     Defendant **SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. Defendant **SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing talc. Furthermore, Defendant **SPECIALTY MINERALS INC.** (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.) has and does business in the State of Mississippi.

94.     Defendant **SPX CORPORATION** (sued individually and as successor-in-interest to KINNEY VACUUM PUMP COMPANY) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in North Carolina.  Defendant **SPX CORPORATION** (sued individually and as successor-in-interest to KINNEY VACUUM PUMP COMPANY) may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.    At all times material hereto, Defendant **SPX CORPORATION** (sued individually and as successor-in-interest to KINNEY VACUUM PUMP COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Kinney Pumps.    Furthermore, Defendant **SPX CORPORATION** (sued individually and as successor-in-interest to KINNEY VACUUM PUMP COMPANY) has and does business in the State of Mississippi.

95.     Defendant **STERLING FLUID SYSTEMS (USA), LLC** f/k/a PEERLESS PUMP CO. was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Indiana.  Defendant **STERLING FLUID SYSTEMS (USA), LLC** f/k/a PEERLESS PUMP CO. may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  At all times material hereto, Defendant **STERLING FLUID SYSTEMS (USA), LLC** f/k/a PEERLESS PUMP CO. developed, manufactured, marketed, distributed and/or sold asbestos-containing Peerless Pumps.   Furthermore, Defendant **STERLING FLUID SYSTEMS (USA), LLC** f/k/a PEERLESS PUMP CO. has and does business in the State of Mississippi.

96.     Defendant **SUPERIOR-LIDGERWOOD-MUNDY CORPORATION**
(sued individually and as successor-in-interest to M.T. DAVIDSON COMPANY) was
and is a company incorporated under the laws of the State of Wisconsin with its principal
place of business in Wisconsin.    Defendant **SUPERIOR-LIDGERWOOD-MUNDY
CORPORATION** (sued individually and as successor-in-interest to M.T. DAVIDSON
COMPANY) may be served through its registered agent in Wisconsin, Arthur Robert
Woodman, 302 Grand Avenue, Superior, WI 54880.    At all times material hereto,
Defendant    **SUPERIOR-LIDGERWOOD-MUNDY    CORPORATION**    (sued
individually and as successor-in-interest to M.T. DAVIDSON COMPANY) developed,
manufactured, marketed, distributed and/or sold asbestos-containing M.T. Davidson
Pumps.    Furthermore,    Defendant    **SUPERIOR-LIDGERWOOD-MUNDY
CORPORATION** (sued individually and as successor-in-interest to M.T. DAVIDSON
COMPANY) has and does business in the State of Mississippi.

97.     Defendant **TACO, INC.** was and is a company incorporated under the
laws of the State of Rhode Island with its principal place of business in Rhode Island.
Defendant **TACO, INC.** may be served through its registered agent in Rhode Island,
Corporation Service Company, 222 Jefferson Boulevard, Suite 200, Warwick, RI 02888.
At all times material hereto, Defendant **TACO, INC.** developed, manufactured,
marketed, distributed and/or sold asbestos-containing Taco Pumps.    Furthermore,
Defendant **TACO, INC.** has and does business in the State of Mississippi.

98.     Defendant **TE CONNECTIVITY CORPORATION** f/k/a TYCO
ELECTRONICS CORPORATION for its Raychem brand of products was and is a
company incorporated under the laws of the State of Pennsylvania with its principal place

of business in Pennsylvania. Defendant **TE CONNECTIVITY CORPORATION f/k/a** TYCO ELECTRONICS CORPORATION for its Raychem brand of products may be served through its registered agent in Mississippi, United Agent Group, Inc., 232 Market Street, Suite 1600, Flowood, MS 39232. At all times material hereto, Defendant **TE CONNECTIVITY CORPORATION** f/k/a TYCO ELECTRONICS CORPORATION for its Raychem brand of products developed, manufactured, marketed, distributed and/or sold asbestos-containing Raychem Wire and Raychem Cable. Furthermore, Defendant **TE CONNECTIVITY CORPORATION** f/k/a TYCO ELECTRONICS CORPORATION for its Raychem brand of products has and does business in the State of Mississippi.

99.    Defendant **THERMO-ELECTRIC COMPANY, INC.** (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.) was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. Defendant **THERMO-ELECTRIC COMPANY, INC.** (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.) may be served through its attorney's office in New Jersey, Marc S. Gaffrey, Esq. Hoagland, Longo, Moran, Dunst & Doukas, LLP, 40 Patterson Street, New Brunswick, NJ 08903. At all times material hereto, Defendant **THERMO-ELECTRIC COMPANY, INC.** (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.) developed, manufactured, marketed, distributed and/or sold asbestos-containing Thermo-Electric Wire and Thermo-Electric Cable. Furthermore, Defendant **THERMO-ELECTRIC COMPANY, INC.** (sued as successor to THERMO-ELECTRIC WIRE & CABLE CO.) has and does business in the State of Mississippi.

63

100.    Defendant **UNION CARBIDE CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. Defendant **UNION CARBIDE CORPORATION** may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **UNION CARBIDE CORPORATION** developed, manufactured, marketed, distributed and/or sold asbestos fibers. Furthermore, Defendant **UNION CARBIDE CORPORATION** has and does business in the State of Mississippi.

101.    Defendant **UNISYS CORPORATION** (sued individually and as successor-in-interest to SPERRY CORPORATION f/k/a SPERRY RAND and WATERBURY TOOL COMPANY) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. Defendant **UNISYS CORPORATION** (sued individually and as successor-in-interest to SPERRY CORPORATION f/k/a SPERRY RAND and WATERBURY TOOL COMPANY) may be served through its registered agent in Mississippi, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110. At all times material hereto, Defendant **UNISYS CORPORATION** (sued individually and as successor-in-interest to SPERRY CORPORATION f/k/a SPERRY RAND and WATERBURY TOOL COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Waterbury Pumps. Furthermore, Defendant **UNISYS CORPORATION** (sued individually and as successor-in-interest to SPERRY CORPORATION f/k/a SPERRY RAND and WATERBURY TOOL COMPANY) has and does business in the State of Mississippi.

64

102.    Defendant **VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.) was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. The members of Defendant **VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.) are Hugh B. Vanderbilt, Jr., Joseph Denaro, and Paul Vanderbilt and who reside in Greenwich, Connecticut, and Randall L. Johnson who resides in Monroe, Connecticut. Therefore, Defendant **VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.) is a citizen of the State of Connecticut. Defendant **VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.) developed, manufactured, marketed, distributed and/or sold asbestos-containing talc. Furthermore, Defendant **VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.) has and does business in the State of Mississippi.

103.    Defendant **VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Vermont. Defendant **VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington,

65

DE 19808. At all times material hereto, Defendant **VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION developed, manufactured, marketed, distributed and/or sold asbestos-containing Velan Valves. Furthermore, Defendant **VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION has and does business in the State of Mississippi.

104.    Defendant **VERIZON COMMUNICATIONS INC.** (sued individually and as successor-in-interest to GTE CORPORATION successor-in-interest to PHILCO-FORD CORPORATION) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. Defendant **VERIZON COMMUNICATIONS INC.** (sued individually and as successor-in-interest to GTE CORPORATION successor-in-interest to PHILCO-FORD CORPORATION) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **VERIZON COMMUNICATIONS INC.** (sued individually and as successor-in-interest to GTE CORPORATION successor-in-interest to PHILCO-FORD CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing Philco Radios and Philco Receivers. Furthermore, Defendant **VERIZON COMMUNICATIONS INC.** (sued individually and as successor-in-interest to GTE CORPORATION successor-in-interest to PHILCO-FORD CORPORATION) has and does business in the State of Mississippi.

105.    Defendant **VIACOMCBS INC.** f/k/a CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION and

66

as successor-in-interest to BF STURTEVANT) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. Defendant **VIACOMCBS INC.** f/k/a CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION and as successor-in-interest to BF STURTEVANT) may be served through its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. At all times material hereto, Defendant **VIACOMCBS INC.** f/k/a CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION and as successor-in-interest to BF STURTEVANT) developed, manufactured, marketed, distributed and/or sold asbestos-containing Westinghouse Turbines, Westinghouse  Ships Service Generators, Westinghouse Electrical Panels, Westinghouse Radios, Westinghouse Receivers, Westinghouse Pumps, Westinghouse Valves, Westinghouse Switches, Westinghouse Relays, Westinghouse Breakers, Westinghouse Valves, Westinghouse Motors, Westinghouse Ejectors, Westinghouse Condensers, BF Sturtevant Forced Draft Blowers, BF Sturtevant Pumps, and BF Sturtevant Turbines.   Furthermore, Defendant **VIACOMCBS INC.** f/k/a CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION and as successor-in-interest to BF STURTEVANT) has and does business in the State of Mississippi.

67

106.    Defendant **VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY) was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Arizona.  Defendant **VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  At all times material hereto, Defendant **VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing Griscom-Russell Distilling Plants, Griscom-Russell Oil Coolers, and Griscom-Russell Oil Heaters.  Furthermore, Defendant **VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY) has and does business in the State of Mississippi.

107.    Defendant **VIKING PUMP, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois.  Defendant **VIKING PUMP, INC.** may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  At all times material hereto, Defendant **VIKING PUMP, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing Viking Pumps.  Furthermore, Defendant **VIKING PUMP, INC.** has and does business in the State of Mississippi.

68

108.    Defendant **WALMART INC.** for its Equate line of products was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Arkansas. Defendant **WALMART INC.** for its Equate line of products may be served through its registered agent in Mississippi, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. At all times material hereto, Defendant **WALMART INC.** for its Equate line of products developed, manufactured, marketed, distributed and/or sold asbestos-containing Equate talcum powder. Furthermore, Defendant **WALMART INC.** for its Equate line of products has and does business in the State of Mississippi.

109.    Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Massachusetts. The managing member of Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) is Colfax Corporation, a Delaware corporation with its principal place of business in Maryland. Therefore, Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) is a citizen of the States of Delaware and Maryland. Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) may be served through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. At all times material hereto, Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-

containing Warren Pumps and Quimby Pumps. Furthermore, Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) has and does business in the State of Mississippi.

110. Defendant **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD Massachusetts with its principal place of business in Massachusetts. Defendant **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL may be served at its principal place of business, 29 Old Right Road, Ipswich, MA 01938-1119. At all times material hereto, Defendant **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL developed, manufactured, marketed, distributed and/or sold asbestos-containing Atwood & Morrill Valves. Furthermore, Defendant **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL has and does business in the State of Mississippi.

111. Defendant **WHITTAKER CLARK & DANIELS, INC.** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. Defendant **WHITTAKER CLARK & DANIELS, INC.** may be served through its registered agent in New Jersey, Joe Cobuzio, Tompkins, McGuire, Wacenfeld & Barry, 3 Becker Farm Road, 4th Floor, Roseland, NJ 07068. At all times material hereto, Defendant **WHITTAKER CLARK & DANIELS, INC.** developed, manufactured, marketed, distributed and/or sold asbestos-containing talc. Furthermore, Defendant **WHITTAKER CLARK & DANIELS, INC.** has and does business in the State of Mississippi.

112. Defendant **THE WILLIAM POWELL COMPANY** was and is a company incorporated under the laws of the State of Ohio with its principal place of

70

business in Ohio. Defendant **THE WILLIAM POWELL COMPANY** may be served through its registered agent in Ohio, David R. Cowart, 3261 Spring Grove Avenue, Cincinnati, OH 45225. At all times material hereto, Defendant **THE WILLIAM POWELL COMPANY** developed, manufactured, marketed, distributed and/or sold asbestos-containing Powell Valves. Furthermore, Defendant **THE WILLIAM POWELL COMPANY** has and does business in the State of Mississippi.

## II. JURISDICTION AND VENUE

113. This Court has subject matter jurisdiction. <u>See, e.g.</u>, Article 6 §156 Mississippi Constitution 1890 and/or §9-7-81 Mississippi Code 1972.

114. This Court has jurisdiction of the parties.

115. Venue is proper in this Court. <u>See, e.g.</u> §11-11-3 and §11-11-11 Mississippi Code 1972 and Rule 82 of the Mississippi Rules of Civil Procedure, in that Plaintiff ALLAN WATSON was exposed to respirable asbestos dust during his service in the United States Navy, during his employment at various jobsites, during his repair and maintenance of his personal vehicles and the vehicles of family members and friends, through his use of Kent Micronite Filter cigarettes, and through his personal use and his family members' use of talcum powder products, and all exposures occurred in the State of Mississippi, including Jackson County, in the State of Texas, and during his service in the United States Navy.

116. This civil action is brought pursuant to the laws of the State of Mississippi including, but not limited to, negligence, strict liability, negligence *per se*, breach of warranties, premise liability, conspiracy, and fraud. Plaintiff, by virtue of this lawsuit specifically and intentionally brings only claims under the laws and statutes of the State

71

of Mississippi. Plaintiff does not bring any claims under any federal statute, the United States Constitution and/or federal common law, and none should be inferred.

117. The Circuit Court has jurisdiction over all Defendants because they have done business in Mississippi, committed a tort in Mississippi and have continuous contacts with Mississippi. Specifically, Defendants have sold, designed, manufactured, or marketed an array of defective raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos used at the premises sites where Plaintiff worked in the State of Mississippi, and/or have facilities in Mississippi. Therefore, all Defendants are subject to service by a Mississippi Court. In addition, the damages for which Plaintiff brings suit exceed the minimal jurisdictional limits of the Mississippi State Court.

## III. FACTS

118. At all times referred to herein, Defendants were in the business of designing, researching, manufacturing, packaging, marketing, selling and/or distributing raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos used at the Premises' sites where Plaintiff worked

72

(hereinafter collectively referred to as "Defendants' Products") for sale to and for use by members of the general public.

119.    Defendants placed Defendants' Products into the stream of commerce by selling Defendants' Products to entities and/or individuals who operated and/or maintained the work sites where Plaintiff ALLAN WATSON was employed, and to individuals such as Plaintiff and his family members who used Defendants' Products in and at Plaintiff's personal residences.

120.    Defendants' Products were in the same condition at the time Plaintiff ALLAN WATSON was injured as they were when they were originally manufactured and at the time they were sold and put into the stream of commerce.

121.    Plaintiff ALLAN WATSON was exposed to Defendants' Products during his service in the United States Navy, employment at various jobsites, during his repair and maintenance of his personal vehicles and the vehicles of family members and friends, during his construction of a residence, through his personal use and his family members' use of talcum powder products, and during his use of Kent Micronite Filter cigarettes. During these exposures, Plaintiff ALLAN WATSON was injured through the sale and use of Defendants' Products which created asbestos dust that included particles that were invisible to the human eye but yet were inhaled by workers and individuals such as Plaintiff ALLAN WATSON. This asbestos dust did not fall to the ground but was suspended in the air and traveled over a large distance, subjecting many workers and individuals in the area to an unreasonable risk of harm.

122.    Plaintiff ALLAN WATSON was wrongfully exposed to and inhaled or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

    a.    From approximately 1950 to the 2000s, Plaintiff ALLAN WATSON was exposed to asbestos while performing maintenance and repairs to his personal vehicles and the vehicles of family members and friends while residing in Pascagoula, Mississippi, from approximately 1950 to 1960 and 1966 to 1978, in Dallas, Texas, from approximately 1964 to 1966, and in Moss Point, Mississippi, from approximately 1978 to 2022. During this time period, Plaintiff worked with asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Bendix Brakes, Duralast Brakes, Borg Warner Clutches, Victor Gaskets, Ford friction products, Borg Warner Carburetor Kits, and Holley Carburetors. He was also exposed to asbestos-containing automotive products supplied by Autozone, Inc., Estabrook Motor Co. Inc., Honeywell International, Inc. f/k/a Allied-Signal, Inc. (sued individually and as successor-in-interest to Bendix Corporation), O'Reilly Automotive Stores, Inc., asbestos-containing gasket paper supplied by Hollingsworth & Vose Company, asbestos-containing friction paper supplied by MW Custom Papers, LLC as successor-in-interest to The Mead

74

Corporation, and asbestos fibers supplied by Union Carbide Corporation. Ford Motor Company specifically designed its braking systems for asbestos-containing brake linings such that no other material could be utilized as brake linings in those systems.

b.      From approximately 1955 to 1956, Plaintiff ALLAN WATSON was exposed to asbestos during his use of Kent Micronite Filtered cigarettes while residing in Pascagoula, Mississippi. During this time period, Plaintiff was also exposed to asbestos-containing crocidolite paper supplied by Hollingsworth & Vose Company.

c.      Plaintiff ALLAN WATSON was exposed to asbestos through his late mother's, Kathryn Watson's, regular and frequent use of Johnson's Baby Powder on Plaintiff and his siblings during the 1940s. Plaintiff was also exposed to asbestos through his regular and frequent personal use of asbestos-containing Johnson's Baby Powder from approximately 1950 to 2021, Cashmere Bouquet talcum powder from approximately the 1950s to 2006, Gold Bond Foot Powder, Gold Bond talcum powder, and Dr. Scholl's Foot Powder from approximately 1953 to 2021, intermittently, Shower-to-Shower talcum powder from approximately the 1980s to 2006, and Equate Baby Powder and DG Shower & Bath Body Powder from approximately 2000 to 2021. Plaintiff was also exposed to asbestos through his regular and frequent use of Johnson's Baby Powder on his infant sibling from approximately 1952 to 1954, and

75

through his use of Johnson's Baby Powder on his infant children from approximately 1966 to 1975. Plaintiff was also exposed to asbestos through his late wife's, Betty Watson's, regular and frequent use of Johnson's Baby Powder and Cashmere Bouquet talcum powder from approximately 1959 to 2006, Shower-to-Shower talcum powder from approximately the 1980s to 2006 and Equate Baby Powder and DG Shower & Bath Powder from approximately 2000 to 2006, all while in close proximity to Plaintiff. During these time periods, Plaintiff was also exposed to asbestos-containing talc supplied by Barretts Minerals Inc., Brenntag North America, Inc. (sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Brenntag Specialties LLC f/k/a Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Cosmetic Specialties, Inc. (sued individually and formerly d/b/a G&G Specialty Products Co.), Specialty Minerals Inc. (sued individually and as a subsidiary of Minerals Technologies Inc.) and Whittaker Clark & Daniels, Inc. During these exposures, Plaintiff and his late mother resided in Pascagoula, Mississippi from approximately the 1940s to 1959, Plaintiff and his late wife resided in Pascagoula, Mississippi, from approximately 1959 to 1960 and 1966 to 1978, in Dallas, Texas,

from approximately 1964 to 1966, and Moss Point, Mississippi, from approximately 1978 to 2006. Plaintiff has resided in Moss Point, Mississippi from 1978 to 2022.

d.  Plaintiff was also exposed to asbestos during his work as an apprentice electrician at the Coastal Chemical Plant in Pascagoula, Mississippi, in approximately 1958 at premises owned and/or controlled by Coastal Chemical Co., L.L.C. Plaintiff's job duties included, but were not limited to, laying conduit and pulling cable through the conduit and working directly around pipefitters, insulators, carpenters, laborers and other tradesmen mixing, cutting, and/or applying asbestos-containing insulation products including, but not limited to, pipe covering, block, and/or cement.

e.  Plaintiff was further exposed to asbestos during his employment as a boilermaker's helper at International Paper Mill in Moss Point, Mississippi, from approximately 1959 to 1960, at premises owned and/or controlled by International Paper Company. Plaintiff's job duties included, but were not limited to, cleaning boiler tubes during shutdowns, replacing bearings on pumps, and cutting and installing packing on pumps and valves. During this time period, Plaintiff was exposed to asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos including, but not limited to, Crane Pumps, DeLaval Pumps, Goulds Pumps, Peerless Pumps, Vickers Pumps, Westinghouse

Pumps, Crane Valves, and Westinghouse Valves. Plaintiff wore 3M Masks.

e.    Plaintiff was further exposed to asbestos during his service in the United States Navy on the USS Saratoga (CVA-60) as an Aviation Electronics Technician from approximately 1960 to 1964. Plaintiff's duties included removing, repairing and installing radios, receivers, radars, sonar machines, teletype machines, and their components parts including, but not limited to, wire, cable, electrical panels, switches, relays, breakers, switchboards, and control panels. Plaintiff also ran wire and cable to pumps, and worked around other tradesmen including, but not limited to, pipefitters, insulators and mechanics applying asbestos-containing insulation products to equipment including, but not limited to, heaters, evaporators, air conditioning systems, refrigeration plants, coolers, feed systems, generators, pumps, valves, compressors, turbines, forced draft blowers, ejectors, motors, purifiers and tanks. During this time period, Plaintiff worked with asbestos-containing products, equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or raw asbestos fibers of various kinds and grade including, but not limited to, Bendix Radios, Collins Radios, Federal Telegraph and Radio Radios, Marconi Radios, Philco Radios, Raytheon Radios, RCA Radios, Sylvania Radios, Westinghouse Radios, Bendix Receivers, Collins

78

Receivers, Federal Telegraph and Radio Receivers, Marconi Receivers, Raytheon Receivers, RCA Receivers, Philco Receivers, Sylvania Receivers, Westinghouse Receivers, Raytheon Sonar Machines, Western Electric Teletype Machines, Teletype Corporation Teletype Machines, Martin Alpha Cable, Amphenol Cable, Anaconda Cable, Beldon Cable, General Electric Cable, Okonite Cable, Panduit Cable, Phelps Dodge Cable, Raychem Cable, Thermo-Electric Cable, Alcan Wire, Alpha Wire, American Wire, Amphenol Wire, Anaconda Wire, Beldon Wire, General Electric Wire, Okonite Wire, Panduit Wire, Phelps Dodge Wire, Raychem Wire, Thermo-Electric Wire, Siemens Control Panels, Siemens Switchboards, Cutler Hammer Electrical Panels, General Electric Electrical Panels, Square D Electrical Panels, Western Electric Electrical Panels, Westinghouse Electrical Panels, Cutler Hammer Switches, General Electric Switches, Square D Switches, Westinghouse Switches, Cutler Hammer Relays, General Electric Relays, Square D Relays, Westinghouse Relays, Cutler Hammer Breakers, General Electric Breakers, Square D Breakers, Westinghouse Breakers, and Electro Dynamic Motors. During this time period, Plaintiff was also exposed to asbestos fibers supplied by Durez Corporation, Occidental Chemical Corporation f/k/a Hookers Chemical Co. (sued as successor-in-interest to Durez Corporation), and Union Carbide Corporation, and asbestos-

containing Marinite Board and Micarta Board supplied by Hopeman Brothers Inc. Plaintiff worked in close proximity to other tradesmen installing, repairing, and/or insulating Davis Fuel Oil Heaters, Griscom-Russell Oil Heaters, Davis Evaporators, Carrier Air Conditioning Systems, Carrier Refrigeration Plants, Griscom-Russell Oil Coolers, Elliott Deaerating Feed Systems, Foster Wheeler Generators, B.F. Sturtevant Pumps, Buffalo Pumps, DeLaval Pumps, Gardner Denver Pumps, M.T. Davidson Pumps, Northern Pumps, Philadelphia Gear Pumps, Powell Valves, Warren Pumps, Westinghouse Pumps, Atwood & Morrill Valves, Edward Valves, Foster Engineering Valves, Velan Valves, Westinghouse Valves, Gardner Denver Compressors, B.F. Sturtevant Turbines, DeLaval Turbines, Westinghouse Turbines, B.F. Sturtevant Forced Draft Blowers, C.H. Wheeler Air Ejectors, Westinghouse Ejectors, DeLaval Generators, Westinghouse Ships Service Generators, Westinghouse Generators, Westinghouse Motors, Reliance Motors, DeLaval Purifiers, C.H. Wheeler Tanks, C.H. Wheeler Condensers, Griscom-Russell Distilling Plants, John Crane Gaskets, and John Crane Packing.

e.   Plaintiff was also exposed to asbestos during his employment as an electrician, technician, foreman and supervisor at Ingalls Shipyard in Pascagoula, Mississippi, from approximately 1966 to 2001 during the new construction and overhaul of naval vessels.

80

Plaintiff's duties included, but were not limited to, working in the control rooms and engineering spaces of naval vessels where Plaintiff spliced, cut and installed insulated wire and cable, and repaired and installed radios, radar, sonar equipment, switchboards, electrical panels, consoles, communication centers, and electronics systems. Plaintiff worked in close proximity to pipefitters, insulators, and mechanics repairing and insulating equipment in the engineering spaces on the ships including, but not limited to, oil heaters, evaporators, air conditioning systems, oil coolers, feed systems, pumps, valves, engines, boilers, generators, turbines, distilling plants, forced draft blowers, condensers, motors, purifiers and tanks. Plaintiff worked on numerous naval vessels including, but were not limited to, the following during the indicated time periods:

| NAVAL SHIPS/SUBMARINES: | LAID DOWN: | COMMISSIONED: |
|---|---|---|
| USS TRIPOLI – LPH-10 | 1964 | 1966 |
| USS TARAWA – LHA-1 | 1971 | 1976 |
| USS SAIPAN – LHA-2 | 1972 | 1977 |
| USS BELLEAU WOOD – LHA-3 | 1973 | 1978 |
| USS NASSAU – LHA-4 | 1973 | 1979 |
| USS PELELIU – LHA-5 | 1976 | 1980 |
| USS WASP – LHD-1 | 1985 | 1989 |
| USS ESSEX – LHD-2 | 1989 | 1992 |
| USS KEARSARGE – LHD-3 | 1990 | 1993 |
| USS BOXER – LHD-4 | 1991 | 1995 |
| USS BATAAN – LHD-5 | 1994 | 1997 |
| USS BONHOMME RICHARD – LHD-6 | 1995 | 1998 |
| USS SPRUANCE – DD-963 | 1972 | 1975 |
| USS PAUL F. FOSTER – DD-964 | 1973 | 1976 |
| USS KINKAID – DD-965 | 1973 | 1976 |
| USS HEWITT – DD-966 | 1973 | 1976 |

| | | |
|---|---|---|
| USS ELLIOT – DD-967 | 1973 | 1977 |
| USS ARTHUR W. RADFORD – DD-968 | 1974 | 1977 |
| USS PETERSON – DD-969 | 1974 | 1977 |
| USS CARON – DD-970 | 1974 | 1977 |
| USS DAVID R. RAY – DD-971 | 1974 | 1977 |
| USS OLENDORF – DD-972 | 1974 | 1978 |
| USS JOHN YOUNG – DD-973 | 1975 | 1978 |
| USS CONTE DE GRASSE – DD-974 | 1975 | 1978 |
| USS O'BRIEN – DD-975 | 1975 | 1977 |
| USS MERRILL – DD-976 | 1975 | 1978 |
| USS BRISCOE – DD-977 | 1975 | 1978 |
| USS STUMP – DD-978 | 1975 | 1978 |
| USS CONOLLY – DD-979 | 1975 | 1978 |
| USS MOOSBRUGGER – DD-980 | 1975 | 1978 |
| USS JOHN HANCOCK – DD-981 | 1976 | 1979 |
| USS NICHOLSON – DD-982 | 1976 | 1979 |
| USS TICONDEROGA – CG-47 | 1980 | 1983 |
| USS YORKTOWN – CG-48 | 1981 | 1984 |
| USS BUNKER HILL – CG52 | 1984 | 1986 |
| USS LEYTE GULF – CG-55 | 1985 | 1987 |
| USS SAN JACINTO – CG-56 | 1985 | 1988 |
| USS LAKE CHAMPLAIN – CG-57 | 1986 | 1988 |
| USS HADDOCK – SSN-621 | 1961 | 1967 |
| USS TAUTOG – SSN-639 | 1964 | 1968 |
| USS POGY – SSN-647 | 1964 | 1971 |
| USS ASPRO – SSN-648 | 1964 | 1969 |
| USS PUFFER – SSN-652 | 1965 | 1969 |

During this time period, Plaintiff worked with and around asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or raw asbestos fibers of various kinds and grades including, but not limited to, Bendix Radios, Collins Radios, Federal Telegraph and Radio Radios, Marconi Radios, Philco Radios, Raytheon Radios, RCA Radios, Sylvania Radios, Westinghouse Radios, Bendix Receivers, Collins Receivers, Federal Telegraph and Radio Receivers, Marconi Receivers, Raytheon Receivers,

RCA Receivers, Philco Receivers, Sylvania Receivers, Westinghouse Receivers, Raytheon Sonar Machines, Western Electric Teletype Machines, Teletype Corporation Teletype Machines, General Electric Consoles, Alpha Cable, Amphenol Cable, Anaconda Cable, Beldon Cable, General Electric Cable, Okonite Cable, Olympic Cable, Panduit Cable, Phelps Dodge Cable, Philatron Cable, Pirelli Cable, Raychem Cable, Rockbestos Cable, Thermo-Electric Cable, Alcan Wire, Alpha Wire, American Wire, Amphenol Wire, Anaconda Wire, Beldon Wire, General Electric Wire, Okonite Wire, Olympic Wire, Thermo-Electric Wire, Panduit Wire, Phelps Dodge Wire, Philatron Wire, Raychem Wire, Rockbestos Wire, Siemans Control Panels, Siemans Switchboards, Cutler Hammer Electrical Panels, General Electric Electrical Panels, Square D Electrical Panels, Western Electric Electrical Panels, Westinghouse Electrical Panels, Cutler Hammer Switches, General Electric Switches, Square D Switches, Westinghouse Switches, Cutler Hammer Relays, General Electric Relays, Square D Relays, Westinghouse Relays, Cutler Hammer Breakers, General Electric Breakers, Square D Breakers, Westinghouse Breakers, General Electric Transformers, General Electric Turbines, Griscom-Russell Distilling Plants, Griscom-Russell Oil Coolers, York Air Conditioning Systems, C.H. Wheeler Condensers, Elliott Condensers, DeLaval Generators,

83

General Electric Generators, Cooper-Bessemer Diesel Engines, Cleaver-Brooks Boilers, Teledyne Laars Boilers, B. F. Sturtevant Forced Draft Blowers, DeLaval Purifiers, C.H. Wheeler Tanks, Elliott Water Tanks, Elliott Deaerating Feed Systems, Gardner Denver Compressors, C.H. Wheeler Air Ejectors, Griscom-Russell Fuel Oil Heaters, B.F. Sturtevant Turbines, DeLaval Turbines, General Electric Motors, General Electric Blowers, Aurora Pumps, Blackmer Pumps, B.F. Sturtevant Pumps, Buffalo Pumps, Carrier Valves, Crane Pumps, DeLaval Pumps, Demings Pumps, Gardner Denver Pumps, General Electric Pumps, Goulds Pumps, Kinney Pumps, M.T. Davidson Pumps, Northern Pumps, Peerless Pumps, Quimby Pumps, Taco Pumps, Vickers Pumps, Viking Pumps, Warren Pumps, Waterbury Pumps, Crane Valves, Foster Engineering Valves, Westinghouse Valves, A.W. Chesterton Cloth, A.W. Chesterton Gaskets, John Crane Gaskets, A.W. Chesterton Packing, and John Crane Packing. Plaintiff was also exposed to asbestos-containing Marinite Board and Micarta Board supplied by Hopeman Brothers, Inc., and asbestos fibers supplied by Durez Corporation, Occidental Chemical Corporation f/k/a Hookers Chemical Co. (sued as successor-in-interest to Durez Corporation) and Union Carbide Corporation.

f.      Plaintiff was further exposed to asbestos during the construction of a residence in Three Rivers, Jackson County, Mississippi, in

84

approximately 1976. Plaintiff's duties included, but were not limited to, applying and sanding DAP Caulk around door frame and windows. During this time period, Plaintiff was also exposed to asbestos-containing talc supplied by Pfizer Inc., R. T. Vanderbilt Holding Company, Inc. (sued individually and as successor-in-interest to R. T. Vanderbilt Company, Inc.), and Vanderbilt Minerals, LLC (sued as successor-by-merger to R. T. Vanderbilt Company, Inc.).

123.    As a result of his exposure to Defendants' Products designed, researched, manufactured, packaged, marketed, sold and/or distributed by the Defendants named herein, Plaintiff ALLAN WATSON has been severely injured. Plaintiff ALLAN WATSON's injuries, illnesses, disabilities and damages include the disease mesothelioma.

124.    The scientific community and the Defendants have known since the 1930s that exposure to asbestos dust causes the respiratory disease of asbestosis. However, such facts were not known to Plaintiff ALLAN WATSON or the community at large. As set out below, the named Defendants have sold, researched, manufactured, packaged, marketed, and/or distributed Defendants' Products that have caused or contributed to Plaintiff's injuries, illnesses, disabilities and damages. These Defendants have failed to implement their knowledge, constructive or actual, that asbestos caused the occupational lung disease called asbestosis and other illnesses when used. Their failure to market Defendants' Products safely and their failure to market safe Defendants' Products have

caused Plaintiff ALLAN WATSON's injuries, illnesses, disabilities and damages and diagnosis of mesothelioma.

125.    Defendants knew or should have known that Defendants' Products, which contained high quantities of asbestos, should not have been sold for their intended use. Defendants knew or should have known that Defendants' Products, which contained high quantities of asbestos, were defective, unsafe, and unfit for use.  Defendants knew or should have known:

    a.    that asbestos is unreasonably dangerous when used for its intended purpose; and

    b.    that workers and individuals lacked knowledge regarding the extent of danger and the proper means of control;

    c.    that employers and workers lacked knowledge regarding the extent of danger and the proper means of control; and

    d.    the respiratory hazards contained after actual use ceased due to the suspension of respirable fibrogenic and invisible dust in the air.

## IV. DEFENDANTS AND THEIR DEFECTIVE ASBESTOS-CONTAINING PRODUCTS AND EQUIPMENT

126.    Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

127.    During the exposure periods referenced herein, each of the Defendants designed, tested, evaluated, manufactured, packaged, furnished, supplied, distributed and/or sold Defendants' Products that each contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos," or materially assisted or aided or abetted others in so doing for use at the employment sites and/or personal residences

86

of Plaintiff ALLAN WATSON. All references to "asbestos" in this Complaint shall mean and be limited to the Defendants' and/or their predecessors-in-interests' products described and used at Plaintiff's workplaces and personal residences. Plaintiff ALLAN WATSON was exposed to asbestos at his workplaces and personal residences.

128.    The Defendants and their predecessors-in-interest named below are liable to Plaintiff ALLAN WATSON for causing his asbestos-induced mesothelioma from his exposure to Defendants' Products at his workplaces and personal residences.

## V. ALLEGATIONS AGAINST MANUFACTURING AND EQUIPMENT DEFENDANTS

129.    Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

130.    Plaintiff ALLAN WATSON alleges he was exposed to Defendants' Products as previously alleged in this Complaint. Each Defendant corporation or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, sale, and distribution of Defendants' Products. Plaintiff alleges that he was been exposed, on numerous occasions, to Defendants' Products produced and sold by Defendants and, in so doing, caused Plaintiff to inhale great quantities of asbestos fibers. Further, Plaintiff alleges as more specifically set out below that he has suffered injuries, illnesses, disabilities and damages proximately caused by his exposure to Defendants' Products which were designed, manufactured, and sold by Defendants. In that each exposure to Defendants' Products caused or contributed to Plaintiff's injuries, illnesses, disabilities and damages, Plaintiff says that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

87

131.    Plaintiff ALLAN WATSON was exposed to Defendants' Products that were manufactured, designed, and/or distributed by the Defendants and/or their predecessors-in-interest for use in automotive maintenance and repair, in Kent Micronite filtered cigarettes, in military operations, on commercial and industrial jobsites, and for personal hygiene. Plaintiff would show that the defective design and condition of Defendants' Products rendered them unreasonably dangerous, and that Defendants' Products were in this defective condition at the time they were designed or left the hands of Defendants. Plaintiff would show that Defendants' Products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to said products. Plaintiff would show that this market defect rendered Defendants' Products unreasonably dangerous at the time they were designed or left the hands of the Defendants. Plaintiff would show that Defendants are liable in product liability including, but not limited to, strict product liability for the above-described defects.

132.    Defendants are or were engaged in the business of selling, manufacturing, producing, designing, and otherwise putting into the stream of commerce Defendants' Products, and said products, without substantial change in the condition in which they were sold, manufactured, produced, designed, and otherwise put into the stream of commerce, were a proximate and producing cause of the injuries, illnesses, disabilities and damages of Plaintiff ALLAN WATSON.

133.    Defendants knew that Defendants' Products would be used without inspection for defects and by placing them on the market, represented that they would

safely do the job for which they were intended, which must necessarily include safe use, manipulation or installation of Defendants' Products.

134.    Plaintiff ALLAN WATSON was unaware of the hazards and defects in Defendants' Products which made them unsafe for purposes of use, manipulation or installation.

135.    During the periods that Plaintiff ALLAN WATSON was exposed to Defendants' Products, said products were being utilized in a manner that was intended by Defendants.

136.    In the event that Plaintiff is unable to identify each injurious exposure to Defendants' Products, Plaintiff would show the Court that the Defendants named herein represent or represented a substantial share of the relevant market of Defendants' Products at all times material to this cause of action.    Consequently, each Defendant should be held jointly and severally liable under the doctrines of enterprise liability, market-share liability, concert of action and alternative liability, among others.

137.    The illness and disabilities of Plaintiff ALLAN WATSON are a direct and proximate result of the negligence of each Defendant and/or its predecessors-in-interest in that said entities produced, designed sold and otherwise put into the stream of commerce Defendants' Products which the Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff ALLAN WATSON's health and well-being.    Certain Defendants created hazardous and deadly conditions to which Plaintiff ALLAN WATSON was exposed and which caused him to be exposed to large amounts of asbestos fibers.    The Defendants were negligent in

one, some, or all of the following respects, among others, same being the proximate cause of Plaintiff ALLAN WATSON's illness and disabilities.

a.  in failing to timely and adequately warn Plaintiff ALLAN WATSON of the dangerous characteristics and serious health hazards associated with exposure to Defendants' Products;

b.  in failing to provide Plaintiff ALLAN WATSON with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect him from being harmed and disabled by exposure to Defendants' Products;

c.  in failing to place timely and adequate warnings on the containers of Defendants' Products, or on Defendants' Products themselves, to warn of the dangers to one's health of coming into contact with Defendants' Products;

d.  in failing to take reasonable precautions or exercise reasonable care to publish, adopt, and enforce a safety plan and safe method of handling and installing Defendants' Products in a safe manner;

e.  in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in Defendants' Products;

f.  in failing to properly design and manufacture Defendants' Products for safe use under conditions of use that were reasonably anticipated;

g.  in failing to properly test Defendants' Products before they were

90

released for their intended use; and

h.     in failing to recall or remove Defendants' Products from the stream
       of commerce despite knowledge of the unsafe and dangerous
       nature of Defendants' Products.

## VI. ALLEGATIONS AGAINST SUPPLIER AND DISTRIBUTOR DEFENDANTS

138.   Plaintiff realleges and incorporates herein the foregoing allegations of this
Complaint.

139.   For all pertinent times, UNION CARBIDE CORPORATION individually,
sold, distributed, and supplied asbestos which Plaintiff ALLAN WATSON came in
contact with, worked with and utilized, and asbestos dust and fibers he inhaled, causing
his injuries, illnesses, disabilities and damages, illnesses and disabilities. Specifically,
UNION CARBIDE CORPORATION fraudulently misrepresented that its Calidria
asbestos was safer than other types of chrysotile asbestos to induce asbestos
manufacturers to purchase Calidria, when UNION CARBIDE CORPORATION knew
that no scientific basis existed for making such a claim.

140.   For all pertinent times, Defendants AUTOZONE, INC., BARRETTS
MINERALS INC., BRENNTAG NORTH AMERICA, INC. (sued individually and as
successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-
interest to WHITTAKER CLARK & DANIELS, INC.), BRENNTAG SPECIALTIES
LLC f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT
SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER
CLARK & DANIELS, INC.), COSMETIC SPECIALTIES, INC. (sued individually and
formerly d/b/a G&G SPECIALTY PRODUCTS CO.), DUREZ CORPORATION,

ESTABROOK MOTOR CO. INC., HOLLINGSWORTH & VOSE COMPANY, HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued individually and as successor-in-interest to BENDIX CORPORATION, BENDIX AVIATION CORPORATION successor-in-interest to BENDIX RADIO CORPORATION), HOPEMAN BROTHERS INC., MW CUSTOM PAPERS, LLC as successor-in-interest to THE MEAD CORPORATION, O'REILLY AUTOMOTIVE STORES, INC., PFIZER INC., R. T. VANDERBILT HOLDING COMPANY, INC. (sued individually and as successor-in-interest to R. T. VANDERBILT COMPANY, INC.), SPECIALTY MINERALS INC. (sued individually and as a subsidiary of MINERALS TECHNOLOGIES INC.), UNION CARBIDE CORPORATION, VANDERBILT MINERALS, LLC (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.), and WHITTAKER CLARK & DANIELS, INC. (hereinafter collectively referred to as "Supplier Defendants") as manufacturers, miners, shippers, sellers and suppliers of raw asbestos fibers, and/or asbestos-containing talc, and/or asbestos-containing products (hereinafter collectively referred to as "Supplier Defendants' Products") to various locations owned or operated by asbestos product manufacturers, are liable to Plaintiff for their failure to warn of the health hazards of exposure to asbestos and failure to design and package Supplier Defendants' Products so as to adequately protect and warn users of the dangers of exposure to asbestos.

141. Further, Supplier Defendants are liable to Plaintiff as professional vendors of Supplier Defendants' Products and as such, because of the Supplier Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the Supplier Defendants' Products they sold, and are strictly liable and

92

negligent for failing to warn users and bystanders of potential health hazards from the use of Supplier Defendants' Products.

142. Further, Supplier Defendants made misrepresentations regarding the safety of asbestos to the asbestos-product manufacturers, thereby fraudulently inducing other sophisticated users to use Supplier Defendants' Products instead of other types. As such, Supplier Defendants are liable to Plaintiff ALLAN WATSON for his suffering from a disease caused by exposure to the Supplier Defendants' Products because Supplier Defendants' fraudulent or intentional misrepresentations were detrimentally relied upon (1) by asbestos-product manufacturers incorporating Supplier Defendants' Products into their finished products and (2) by the Plaintiff ALLAN WATSON who was exposed to the asbestos-containing products.

143. Finally, Supplier Defendants are liable to Plaintiff because they knew or should have known that the Supplier Defendants' Products, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Plaintiff ALLAN WATSON's diagnosis of mesothelioma.

144. Certain Defendants sold and distributed the Supplier Defendants' Products designed, manufactured, and marketed by other companies, including their co-Defendants.

145. These Defendants were familiar with the work sites where Plaintiff ALLAN WATSON worked, and that Plaintiff would use and/or work with Defendant's Products at his personal residences for their intended purpose. Moreover, these Defendants often recommended Defendants' Products used at Plaintiff's work sites and at

93

his personal residences. These Defendants recommended and sold equipment with the knowledge that their equipment was improper for use in the applications at Plaintiff's work sites. Additionally, these Defendants sold products that contained, produced or caused the production of asbestos-containing products, without informing end users and individuals of the following:

       a.    the appropriate respiratory protection that should be used with Supplier Defendants' Products;

       b.    the dangers associated with use of Supplier Defendants' Products; and

       c.    the dangers Supplier Defendant's Products presented to co-workers and individuals in the zone of danger of Supplier Defendants' Products.

146.    In addition to the foregoing, Supplier Defendants are also liable for the negligent acts stated in the preceding paragraphs. Their additional negligent conduct was a proximate cause of Plaintiff's injuries, illnesses, disabilities and damages.

**COUNT VII: ALLEGATIONS AGAINST PREMISES DEFENDANTS**

147.    All of the allegations contained in the previous paragraphs are realleged herein.

148.    Plaintiff ALLAN WATSON worked at premises owned and/or controlled by COASTAL CHEMICAL CO., L.L.C. and INTERNATIONAL PAPER COMPANY (hereinafter collectively referred to as "Premises Defendants") at which Plaintiff was exposed to dust from asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products.

94

149. While present at premises owned and/or controlled by the Premises Defendants, Plaintiff ALLAN WATSON was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by the Premises Defendants who had the responsibility for such.

150. Plaintiff would show that his injuries, illnesses, and disabilities were the result of intentional acts and/or omissions and/or negligence, gross negligence and malice in the use of asbestos at premises owned and/or controlled by the Premises Defendants. Premises Defendants failed to properly remove and/or abate said asbestos at their facilities during the time Plaintiff ALLAN WATSON was working there.

151. Plaintiff would show that Premises Defendants were negligent, grossly negligent and malicious, and committed certain intentional acts, all of which were the proximate cause of his injuries, illnesses and disabilities resulting in mesothelioma from exposure to asbestos and his damages thereto.

152. In particular, Plaintiff would show that Premises Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff, and that such intentional acts and omissions proximately caused his injuries, illnesses and disabilities.

153. Specific intentional acts and acts constituting negligence, gross negligence and malice committed by Premises Defendants that proximately caused Plaintiff ALLAN WATSON's injuries, illnesses and disabilities include:

    a.    failure to provide safe equipment for Plaintiff ALLAN WATSON and others to use;

b.      failure to provide adequate safety measures and protection against deadly and life-threatening asbestos dust, all despite Premises Defendants' knowledge of the extreme risk of harm inherent to asbestos exposure;

c.      failure to adequately warn Plaintiff ALLAN WATSON of the inherent dangers of asbestos contamination;

d.      failure to maintain the ambient and environmental conditions of the premises in proper and safe condition; and

e.      failure to follow and adhere to various states and U.S. Government statutes, regulations and guidelines pertaining to asbestos and the exposure to asbestos of individuals.   Such failure constituted negligence per se at a minimum.

Plaintiff is not making claims for damages under federal law.

154.    Plaintiff would further show that Premises Defendants intentionally, knowingly, and/or due to negligence, gross negligence and malice failed to ensure that individuals such as Plaintiff were protected from the inhalation of asbestos and asbestos fibers. Such actions proximately caused Plaintiff ALLAN WATSON's injuries, illnesses, disabilities, and damages.

155.    Additionally, specific actions or omissions on the part of Premises Defendants that proximately caused Plaintiff ALLAN WATSON's injuries, illnesses, disabilities, and damages were:

a.      attempting to remove asbestos dust in Plaintiff ALLAN WATSON's workplaces without taking adequate precautions for

96

the protection of workers in the vicinity and/or in the premises generally;

b.      failing to provide proper protective gear for individuals exposed to asbestos;

c.      failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos;

d.      failing to provide a proper and safe method for the use of asbestos and asbestos fibers;

e.      failing to adhere to industry safe standards and other established measures to protect workers from harm; and

f.      failing to adequately warn of the extreme risk of danger of inherent to asbestos exposure.

156.    Premises Defendants demonstrated such an entire want of care as to establish that their acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff ALLAN WATSON.

## VIII. INJURIES, ILLNESSES, DISABILITIES, DAMAGES AND CAUSATION

157.    Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

158.    As a direct and proximate contributing result of having inhaled or otherwise having been exposed to asbestos during the exposure periods previously detailed, Plaintiff ALLAN WATSON has received injuries, illnesses, disabilities and damages, both physical and mental including, but not limited to, mesothelioma, which will ultimately result in his death.

97

159.    Plaintiff ALLAN WATSON would further show that as a proximate result of having inhaled or otherwise having been exposed to asbestos, he has received permanent and painful injuries, illnesses, disabilities and damages, and has suffered and will continue to suffer physical and mental pain and anguish including, but not limited to, physical and mental pain and anguish, disability, medical and pharmaceutical expenses, and loss of the enjoyment of life.

160.    Because of the latency period of the above-described injuries, illnesses, disabilities and damages, and because of the active concealment by the Defendants of the causes and effects of exposure to asbestos, Plaintiff discovered his injuries, illnesses, disabilities and damages when he was diagnosed with mesothelioma on or about October 2021.

161.    This Complaint is timely filed under Mississippi law against all known Defendants.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and collectively in an amount to be determined by a jury at trial.

## IX. STRICT LIABILITY
## (AGAINST ALL DEFENDANTS EXCEPT METROPOLITAN LIFE INSURANCE COMPANY)

162.    Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

163.    Defendants and/or their predecessor entities were engaged in, or materially participated with others in the business of selling Defendants' Products which were expected to and did reach Plaintiff ALLAN WATSON without substantial change in the

98

condition in which they were sold, and where said asbestos dusts were inhaled by Plaintiff ALLAN WATSON.

164.   Defendants' Products were in a defective condition and unreasonably dangerous to Plaintiff ALLAN WATSON who was an intended and foreseeable worker, user and/or bystander during the use of Defendants' Products.  These defects included without limitation:

a.     the inherent and known properties common to asbestos sold by the Defendants that gave them unreasonably high potential for causing respiratory diseases, cancer and other health problems to workers and individuals who would be exposed to asbestos;

b.     the lack of warnings or lack of sufficient and adequate warnings by the Defendants, who were in a position of superior knowledge concerning the dangerous properties of asbestos when used for the purpose for which it was manufactured and sold, and which dangerous propensities were unknown to Plaintiff ALLAN WATSON;

c.     the lack of instructions or lack of sufficient instructions by the Defendants for eliminating or minimizing the health risks inherent in the use of asbestos;

d.     the lack of reasonable inspections by the Defendants to ensure that their Defendants' Products contained sufficient warnings of the dangerous properties of asbestos;

e.   the lack of reasonable inspections by the Defendants of Defendants' Products to ensure that said products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of asbestos;

f.   the lack of tests or lack of sufficient tests by the Defendants to determine and/or eliminate the harmful effects of asbestos on intended workers, users and bystanders;

g.   the defective design by calling for the inclusion of asbestos in products that did not require asbestos, and where alternate, equally suitable substances were available;

h.   the defective design because Defendants' Products were more dangerous than would be contemplated by an ordinary user, and because the risks of Defendants' Products outweighed their benefits;

i.   the lack of warnings or lack of sufficient and adequate warnings by the Defendants upon their discovering the full extent of the dangers presented by Defendants' Products; and

j.   their defective manufacture as Defendants' Products failed to comply with their own specifications.

165.   Each of the Defendants knew or should have known that Plaintiff ALLAN WATSON would be exposed to Defendants' Products without an inspection of the medical literature by the Plaintiff on the adverse health effects of asbestos. By marketing Defendants' Products and specifying asbestos to be used in same, the Defendants

represented to Plaintiff and to the public, who justifiably relied thereon, that asbestos was not dangerous.

166.    The defective condition of Defendants' Products proximately caused or proximately contributed to Plaintiff ALLAN WATSON's injuries, illnesses, disabilities and damages as described in this Complaint.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collective in an amount to be determined by a jury at trial.

### X.  NEGLIGENCE
### (AGAINST ALL DEFENDANTS EXCEPT METROPOLITAN LIFE INSURANCE COMPANY)

167.    Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

168.    Each of the Defendants had, but breached, duties to the Plaintiff to exercise the highest standard of care in designing, testing, manufacturing, marketing, and selling Defendants' Products that are extraordinarily and inherently dangerous.   The breached duties included, without limitation, the duty:

      a.      to select available alternate materials that would reduce or eliminate health hazards to those who work with, use, and/or are in the vicinity of asbestos;

      b.      to warn adequately of the extraordinary health hazards known by the Defendants to be associated with asbestos use;

      c.      to instruct adequately in the methods of using asbestos that would reduce the danger of inhalation of asbestos dust;

      d.      to adequately test Defendants' Products to determine the dangers

101

concomitant with their use;

e.    to remove Defendants' Products from the stream of commerce upon discovering their dangerous properties; and

f.    to inspect Defendants' Products for adequate warnings.

169.    As a direct and proximate result of the Defendants aforesaid breaches of their duties, Plaintiff ALLAN WATSON has sustained the injuries, illnesses, disabilities and damages described in this Complaint.

170.    In breaching and/or conspiring with, aiding, abetting or materially assisting others in breaching their duties to Plaintiff as described above, Defendants acted intentionally and/or with gross negligence, and/or recklessly, maliciously and wantonly in that Defendants and each of them knew or should have known that through data available exclusively to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended and foreseen by the Defendants, and that each of the aforesaid breaches of duty would result in the complained of injuries, illnesses, disabilities and damages to Plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

## XI. GROSS NEGLIGENCE
## (AGAINST ALL DEFENDANTS EXCEPT METROPOLITAN LIFE INSURANCE COMPANY)

171.    Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

172.    Defendants, jointly and severally, were grossly negligent in that Defendants had knowledge, actual or constructive, of medical and scientific data that

clearly indicated that Defendants' Products were hazardous to human health. However, Defendants acted with a willful, wanton, or reckless disregard for the safety of others by failing to act upon said data, failing to warn the public of the dangerous effects of Defendants' Products, particularly individuals such as Plaintiff ALLAN WATSON who worked with, personally used, and came in close proximity to Defendants' Products. As a result of Defendants' grossly negligent conduct, they should be held liable in punitive damages.

173.    Further, Plaintiff would show that certain of Defendants' Products have been marketed fraudulently, constituting a pattern or practice of intentional wrongful conduct and/or malice resulting damage and injury to Plaintiff. More specifically, Defendants and their predecessors-in-interest consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to the rights and welfare of persons such as Plaintiff ALLAN WATSON. These Defendants' representations and misrepresentations constitute gross negligence and warrant an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and collectively in an amount to be determined by a jury at trial.

## XII. NEGLIGENCE *PER SE* ALLEGATIONS
## (AGAINST ALL DEFENDANTS EXCEPT METROPOLITAN LIFE INSURANCE COMPANY)

174.    Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

175.    The actions of all Defendants also constituted negligence *per se*.

103

176.   Each Defendant violated federal and state regulations relating to asbestos exposure.  Such violations constitute negligence *per se* or negligence as a matter of law. Further, each such violation resulted in dangerous and unlawful exposures to asbestos by Plaintiff ALLAN WATSON.  Plaintiff is not making any claims under federal law; instead, Plaintiff is simply using the violation of federal standards as proof of liability on their state-law theories.  Further, the reference to Federal regulations does not create a Federal question. See *Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804 (1986). Any removal on this basis will be met with an immediate motion for remand and sanctions.

177.   The negligence *per se* of each Defendant was the proximate cause of Plaintiff's injuries, illnesses, disabilities and damages.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

### XIII. BREACH OF WARRANTIES
### (AGAINST ALL DEFENDANTS EXCEPT METROPOLITAN LIFE INSURANCE COMPANY)

178.   Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

179.   Plaintiff reasonably relied upon the Defendants who were manufacturers, sellers, or distributors of Defendants' Products to exercise their skills and judgment to select and furnish goods of a suitable and reasonably safe nature and to furnish products fit for the particular purposes intended and to be supplied in a merchantable condition..

180.   Defendants, and each of them breached their legal duties in that Defendants' Products were not sold and furnished in a merchantable and reasonably safe

104

condition and were not fit for the particular purpose intended in accordance with the laws of the State of Mississippi.

181.    As a direct and proximate result of the Defendants' aforesaid breaches and breaches of other legal duties owed to Plaintiff, Plaintiff has sustained the injuries, illnesses, disabilities and damages as described in this Complaint.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount to be determined by jury at trial.

## XIV. NEGLIGENT MISREPRESENTATION/ ALTERATION OF MEDICAL STUDIES/CONSPIRACY/AID AND ABET CONSPIRACY

182.    Plaintiff ALLAN WATSON realleges and incorporates herein the foregoing allegations of this Complaint.

183.    Plaintiff further alleges that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves and with other entities to cause Plaintiff's injuries, illnesses, disabilities and damages by exposing Plaintiff to dust from harmful and dangerous Defendants' Products. Defendants and other entities further knowingly agreed, contrived, combined, confederated, and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use Defendants' Products or to expose himself to said dangers. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' Products.

184.    In furtherance of said conspiracies, Defendants performed the following overt acts:

105

a.    For many decades, Defendants individually, jointly, and in conspiracy with each other and other entities have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b.    Despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other and other entities fraudulently, willfully, and maliciously:

(1)    withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases from Plaintiff ALLAN WATSON who was being exposed to Defendants' Products;

(2)    caused to be released, published, and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases,

which Defendants knew were incorrect, incomplete, outdated, and misleading; and

(3) distorted the results of medical examinations conducted upon Plaintiff ALLAN WATSON and persons such as Plaintiff who were using and/or working with Defendants' Products and being exposed to the inhalation of asbestos dust and fibers by falsely stating or concealing the nature and extent of the harm to which Plaintiff and persons such as Plaintiff have suffered.

c. Other conspirators participating in the conspiracy, or in ongoing or subsequent conspiracies (hereinafter called the "conspirators") were member companies in the Cosmetic Toiletry and Fragrance Association (now Personal Care Products Council), Quebec Asbestos Mining Association, the Asbestos Textile Institute, and/or the Industrial Hygiene Foundation. Acting in concert, the conspirators fraudulently misrepresented to the public and public officials, *inter alia*, that asbestos did not cause cancer and that the disease asbestosis had no association with pleural and pulmonary cancer and affirmatively suppressed information concerning the carcinogenic and other adverse effects of asbestos exposure on the human respiratory and digestive systems.

107

d.    In addition, Defendants contrived, combined, confederated, and conspired through a series of industry trade meetings and the creation of organizations such as the Air Hygiene Foundation (later the Industrial Hygiene Foundation) to establish authoritative standards for the control of industrial dusts which would act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect workers and individuals such as Plaintiff ALLAN WATSON from contracting asbestos disease or cancer.

e.    In furtherance of said conspiracies, Defendants and their co-conspirators contributed to cause the establishment of a Threshold Limit Value for asbestos exposure and contributed to the maintenance of such Threshold Limit Value despite evidence that this supposed "safe" level of exposure to asbestos would not protect the health of workers and individuals such as Plaintiff ALLAN WATSON even if complied with.

f.    As the direct and proximate result of the false and fraudulent representations, omissions, and concealments set forth above, Defendants individually, jointly and in conspiracy with each other intended to induce Plaintiff ALLAN WATSON to rely upon said false and fraudulent representations, omissions, and concealments to continue to expose himself to the dangers inherent in the use of

108

and exposure to Defendants' Products which caused the release of respirable asbestos fibers.

185.    Plaintiff ALLAN WATSON reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by the Defendants regarding the nature of Defendants' Products.

186.    As a direct and proximate result of Plaintiff ALLAN WATSON's reliance on Defendants' false and fraudulent representations, omissions, and concealments, Plaintiff ALLAN WATSON sustained injuries, illnesses, disabilities and damages, and has been deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' Products.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

## COUNT XV
## ALLEGATIONS AGAINST METROPOLITAN LIFE INSURANCE COMPANY

187.    All of the allegations contained in the previous paragraphs are realleged herein.

188.    Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products to which Plaintiff ALLAN WATSON was exposed, and such assistance by METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products by such manufacturers which proximately caused Plaintiff ALLAN WATSON's injuries, illnesses, disabilities and damages.

109

189.   Defendant METROPOLITAN LIFE INSURANCE COMPANY, through its Policyholders Service Bureau, undertook duties owed by the asbestos-producing Defendants to Plaintiff ALLAN WATSON by the testing of asbestos workers and the conduct of scientific studies.  These duties included without limitation, the duty:

(1)    to test fully and adequately for health risks concomitant to the normal and intended use of Defendants' Products; and

(2)    to instruct fully and adequately in the uses of Defendants' Products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, METROPOLITAN LIFE INSURANCE COMPANY knew or should have known that it was providing testing services for the ultimate protection of third persons, including Plaintiff ALLAN WATSON.

190.   In both conducting said tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos.   METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

191.   Plaintiff ALLAN WATSON unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

192.   As a direct and proximate contributing result of METROPOLITAN LIFE

110

INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information after undertaking to do so; (i) the risk of harm to Plaintiff ALLAN WATSON from asbestos exposure was increased, and (ii) Plaintiff ALLAN WATSON suffered the injuries, illnesses, disabilities and damages described below.

193.   In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiff ALLAN WATSON.

**COUNT XVI**
**FRAUD - MISREPRESENTATION AND CONCEALMENT**
**(AGAINST RESPIRATOR DEFENDANT 3M COMPANY A/K/A MINNESOTA MINING & MANUFACTURING COMPANY ONLY)**

194.    All of the allegations contained in the previous paragraphs are realleged herein.

Relevant National Occupational Health Standards

195.    During the relevant time, there existed occupational safety standards supposedly designed to protect individuals working in or around industrial operations.

111

196.    However, these standards were undermined and/or defeated by 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY (hereinafter referred to as the "Respirator Defendant") who often participated in the development of the standards, was aware of the deficiencies of the standards in its masks and/or respirators, and in order to promote its equipment, provided misinformation about the effectiveness and applicability of its products in the workplace.

197.    In 1955, the Bureau of Mines published criteria for approving respirators. This standard included testing methods for respirators to be used by workers exposed to respirable silica dust. Over the years, this standard was updated by the Bureau of Mines and NIOSH. As set forth, the Respirator Defendant was fully aware that the approval tests only evaluated loading by mass, did not adequately evaluate the true efficiency of the filter to small sub-micron particles, the effects of filter degradation, or the fit of the respirator.

198.    In 1959, national concordance standards were published to help provide guidance for the selection and application of respiratory protection. This standard relies on the respirator manufacturer to provide information on the usage and limitations of its equipment; however, the information provided by the Respirator Defendant was misleading and inadequate for the proper selection, application, and protection of the worker.

199.    In 1971, the Occupational Safety and Health Administration established federal workplace standards. The masks and/or respirator manufacturer necessarily plays a vital role in the proper application of these standards and can undermine their effectiveness and contribute to over-exposure. Specifically, Section 1910.134 requires

112

the user's employer to perform a certain function. First, the employer must establish a written respiratory protection program. To do so, the employer relies on the masks and/or respirator manufacturer for much of this information.

200.    In this case, the Respirator Defendant was aware of approval, fitting, leakage, filter penetration or concentration usage deficiencies that it did not disclose to the employers and users.

201.    Section 1910.134 also requires employers to conduct dust monitoring to select the proper masks and/or respirators. However, the Respirator Defendant represented that its masks and/or respirators were completely protective, misrepresented the contaminants they would protect against and did not provide an upper usage limit until the 1980's, and never provided a particle size limitation. These actions necessarily discouraged the employer from conducting any dust monitoring, provided the Respirator Defendant's masks and/or respirators were used.

202.    Employers are also required to establish safe work practices to be used in conjunction with selected respiratory protection, including selecting the appropriate masks and/or respirators for various activities. False or unsubstantiated claims made by the Respirator Defendant, as set forth above, left the employer unable to select the appropriate masks and/or respirators. Section 1910.134 requires that employers provide properly fitting approved masks and/or respirators for work around contaminants. However, the Respirator Defendant's masks and/or respirators only came in one-size, and the Respirator Defendant was aware that its masks and/or respirators could not fit everyone. Despite this knowledge, the Respirator Defendant still claimed that its masks and/or respirators fit, or could be formed to fit, all faces and sizes. Relying on the

113

Respirator Defendant's misrepresentation, an employer would not believe it had to fit test masks and/or respirators that fit everyone. In addition, the fit of the Respirator Defendant's masks and/or respirators could not be evaluated with suitable, practical, or effective qualitative fit check or fit test or quantitative fit test. In effect, as a result of the Respirator Defendant's misrepresentations and inactions, the employer was left unable to comply with this part of the standard.

203. The employer was also required to inform of the consequences of exposure. However, the Respirator Defendant's misrepresented that its masks and/or respirators fit everyone and could be used in any contaminant level, as long as employees wore the masks and/or respirators in the manner they were intended, and that there could not be exposure or subsequent consequences.

204. The employer was also required to monitor work practices to assure that appropriate equipment was supplied, used, and maintained. Once again, the employer would necessarily have to rely, at least in part, on the respirator manufacturer to help him select the appropriate masks and/or respirators and provide instructions to assure that they were used properly. The Respirator Defendant's misrepresentations regarding its masks and/or respirators, as set forth above, defrauded employers and the users of the masks and/or respirators.

205. Finally, the employer was required to medically evaluate the workers periodically. However, if the employer relied on the assurances of the Respirator Defendant that, by following the manufacturer's recommendations, the employee will not be over-exposed, the employer would be less likely to have the employee medically evaluated or would reduce the frequency of these evaluations.

114

206.   The information distributed to the public, the insulation and commercial industry, and to Plaintiff ALLAN WATSON by the Respirator Defendant, contained material misrepresentations and/or failed to disclose material facts.    Such misrepresentations and concealment included, but are not limited to:

a.   falsely claiming that its masks and/or respirators offered protection against the inhalation of dusts, including asbestos dusts;

b.   falsely claiming that one-size-fits-all masks and/or respirators can provide protection against asbestos dusts for all users;

c.   falsely claiming that said masks and/or respirators provided a dust-tight seal;

d.   falsely claiming that the MSHA and NIOSH approval of said masks and/or respirators guaranteed end user utility and safety;

e.   falsely claiming that said masks and/or respirators passed NIOSH fit checks despite knowledge that NIOSH never evaluated the fit of the masks and/or respirators;

f.   falsely claiming that said masks and/or respirators had passed government fit tests despite knowledge that NIOSH never evaluated the effectiveness, reliability and safety of the fit checking or fit testing procedures as a condition of approval;

g.   falsely claiming that said masks and/or respirators had 99% efficiency against particles with a mean diameter of 0.4-0.6 microns;

115

h.      falsely claiming that said masks and/or respirators were high efficiency;

i.      falsely claiming that said masks and/or respirators were designed and appropriate for use in high asbestos exposure areas;

j.      falsely claiming that said masks and/or respirators stop pneumoconiosis and fibrosis dusts from ever reaching the lungs, were for use in thick choking dusts, could be used in high dust concentration jobs, and were efficient enough to filter out everything harmful to a worker's lungs;

k.      falsely claiming that said masks and/or respirators could be used around any level of asbestos;

l.      falsely promoting said masks and/or respirators as providing respiratory protection against all dust concentrations, fibrosis-producing dusts, toxic dusts and mists;

m.      concealing limitations of said masks and/or respirators with respect to asbestos dusts;

n.      concealing filter degradation from humidity, temperature and other environmental conditions; and

o.      concealing test results which would have led to greater knowledge and awareness on the part of the mask and/or respirator user with respect to the masks' and/or respirators' limitations.

207.    The Respirator Defendant knew that such statements, information, and Representations were false, in and of themselves, and in light of the true facts which were

concealed or failed to be disclosed.

208.    It was the purpose and intent of the Respirator Defendant in making these representations, and in failing to disclose the true facts, to deceive and defraud the public, including Plaintiff and Plaintiff's employer, to gain the confidence of the public, to falsely ensure the quality and fitness for use of said masks and/or respirators and to induce the public to purchase and use said masks and/or respirators and remain brand loyal.

209.    Plaintiff and Plaintiff's employer actually and reasonably relied upon the false statements, as well as the overall fraudulent message conveyed by the Respirator Defendant, and relied upon the omission of material facts, and was thereby induced to purchase and use the Respirator Defendant's masks and/or respirators, which in fact did not protect Plaintiff from asbestos exposure.

210.    At the time that the Respirator Defendant fraudulently misrepresented and concealed material facts, Plaintiff ALLAN WATSON did not know the true facts about said masks and/or respirators which were misrepresented and concealed by the Respirator Defendant.

211.    As a direct and proximate result of Respirator Defendant's misconduct, Plaintiff ALLAN WATSON sustained injuries, illnesses, disabilities and damages, and has been deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' Products.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

117

**COUNT XVII**
**NEGLIGENCE AND STRICT LIABILITY -FAILURE TO WARN**
**(AGAINST RESPIRATOR DEFENDANT 3M COMPANY A/K/A MINNESOTA**
**MINING & MANUFACTURING COMPANY ONLY)**

212.    All of the allegations contained in the previous paragraphs are realleged herein.

213.    That all times material hereto, the Respirator Defendant knew or should have known of the harmful effects of exposure to asbestos dust and fibers to human health, including the health of Plaintiff ALLAN WATSON.

214.    At all times herein relevant, the Respirator Defendant had a duty to exercise reasonable care and caution for the safety of Plaintiff ALLAN WATSON and others working with and around the Defendants' Products.

215.    Moreover, the Respirator Defendant had a duty to provide adequate warnings of all latent dangers of use of Defendant's masks and/or respirators, including the limitations of said masks and/or respirators with respect to their inability to protect users from asbestos dusts.

216.    The Respirator Defendant manufactured and marketed masks and/or respirators which the Respirator Defendant sold and distributed claiming said masks and/or respirators would protect workers from the dangers of breathing, inhaling, and absorbing asbestos dusts.

217.    The Defendants negligently produced, sold, supplied, or otherwise put Defendants' Products into the stream of commerce.

218.    Plaintiff ALLAN WATSON used the Respirator Defendant's masks and/or respirators in the manner in which they were intended.

118

219.   Plaintiff ALLAN WATSON did not know that his use of the Respirator Defendant's masks and/or respirators during his work with Defendants' Products would not protect him from airborne asbestos dust.

220.   In fact, the Respirator Defendant falsely represented that its masks and/or respirators were safe and provided protection against the inhalation of asbestos dusts.

221.   The Respirator Defendant knew or should have known that its masks and/or respirators were not adequate protection against asbestos fibers and their toxic, poisonous, and highly deleterious effect upon persons such as Plaintiff ALLAN WATSON.

222.   Although the Respirator Defendant knew or reasonably should have known that its masks and/or respirators were inadequate to protect users from asbestos dusts and posed a highly harmful threat to Plaintiff's health, the Respirator Defendant was negligent in that it failed to exercise ordinary care and caution for the safety of Plaintiff ALLAN WATSON in one or more of the following respects:

a.   failed to provide any or adequate warnings to persons using its masks and/or respirators while working with and around Defendants' Products and their airborne dusts;

b.   failed to advise or warn Plaintiff ALLAN WATSON of the inadequacies and limitations inherent in its masks and/or respirators;

c.   failed to provide any or adequate instructions concerning the methods of using said masks and/or respirators, including specific instructions on how to fit test and fit check the masks and/or

119

respirators and the limitations of the masks and/or respirators as a protection against asbestos;

d.  failed to place any warnings on the masks and/or respirators or their containers regarding the product's limitations and inadequacies in protecting users from the inhalation and/or absorption of harmful asbestos dusts;

e.  failed to conduct tests on the masks and/or respirators with respect to asbestos dusts to determine the limitations of the masks and/or respirators for users;

f.  designed, manufactured, and sold masks and/or respirators that failed to adequately protect users from asbestos and other dusts.

g.  failed to provide Plaintiff with the knowledge to protect himself from being harmed by exposure to Defendants' Products; and

h.  failed to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan, including fit check, fit test, and efficiency tests for its masks and/or respirators.

223.  The lack of adequate warnings on the Respirator Defendant's masks and/or respirators or on their containers rendered the products defective and unreasonably dangerous.

224.  Plaintiff ALLAN WATSON was exposed to Defendants' Products and their airborne dusts because of the inadequacy, defect, and unreasonably dangerous nature of the Respirator Defendant's masks and/or respirators.

225.  As a direct and proximate result of Respirator Defendant's misconduct,

120

Plaintiff ALLAN WATSON sustained damages including injuries, illnesses, disabilities and damages, and has been deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' Products.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

### COUNT XVIII
### STRICT PRODUCT LIABILITY- DEFECTIVE DESIGN
### (AGAINST RESPIRATOR DEFENDANT 3M COMPANY A/K/A MINNESOTA MINING & MANUFACTURING COMPANY ONLY)

226.    All of the allegations contained in the previous paragraphs are realleged herein.

227.    The Respirator Defendant, while regularly engaged in the business activities aforementioned, did design, develop, manufacture, sell, market, and distribute its masks and/or respirators, which were purchased by Plaintiff's employer and used by Plaintiff ALLAN WATSON.

228.    The Respirator Defendant placed its inadequate masks and/or respirators on the market and knew or should have known they would be used without inspection for defects.

229.    The Respirator Defendant's masks and/or respirators were expected to reach and did reach the usual consumers, including Plaintiff ALLAN WATSON, without substantial change in the condition in which they were designed, produced, manufactured, sold, distributed, and marketed by the Respirator Defendant.

230.    The Respirator Defendant failed to design, develop, manufacture, sell, market, and distribute its masks and/or respirators in such a manner as to render them safe for their intended and foreseeable uses by companies and users to which the

121

Respirator Defendant marketed these products. By way of example and not limitation, the Respirator Defendant:

    a.    failed to design, develop, manufacture and test its masks and/or respirators in such a manner as to render them safe for their intended and foreseeable users, when the Respirator Defendant knew or should have known that the foreseeable use of and intended purpose of its masks and/or respirators was by persons, specifically Plaintiff ALLAN WATSON, who worked with and around Defendants' Products;

    b.    marketed and sold said masks and/or respirators as sufficient respiratory protection against asbestos dusts while the same was in an unreasonably dangerous and defective condition, presenting a hazardous risk to Plaintiff's well-being; and

    c.    failed to recall or attempt to repair the defective masks and/or respirators when the Respirator Defendant was and had been aware of the propensity of said products to injure Plaintiff.

231.    Moreover, when the Respirator Defendant's masks and/or respirators left the Respirator Defendant's possession and were placed on the market, the masks and/or respirators were defective in that:

    a.    when used in the intended or reasonably foreseeable manner, the masks and/or respirators were not reasonably safe for their intended use;

    b.    when used in the intended or reasonably foreseeable manner, the

masks and/or respirators failed to perform as safely as would be expected by an ordinary user or consumer; and

c.      when used in the intended or reasonably foreseeable manner, the masks and/or respirators caused a risk of harm beyond that which would be contemplated by the ordinary user or consumer.

232.    The Respirator Defendant knew that its masks and/or respirators were in a defective condition with respect to asbestos dusts and not reasonably safe for their marketed and intended use.

233.    With this knowledge, the Respirator Defendant voluntarily designed, manufactured, and distributed its masks and/or respirators in a defective condition for use by the public and, in particular, by Plaintiff ALLAN WATSON.

234.    As a direct and proximate result of using the Respirator Defendant's defective masks and/or respirators for the general purpose for which they were designed and intended, Plaintiff ALLAN WATSON was overexposed to asbestos, contracted mesothelioma, and suffered from other various diverse injuries, illnesses, disabilities, damages and attendant complications.

235.    Accordingly, the Respirator Defendant is strictly liable to Plaintiff ALLAN WATSON for defective design and manufacture, and/or marketing, distributing, supplying, and selling a defective product.

236.    As a direct and proximate result of Respirator Defendant's misconduct, Plaintiff ALLAN WATSON sustained damages including injuries, illnesses, disabilities and damages, and has been deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' Products.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

## COUNT XIX
## BREACH OF EXPRESS WARRANTY
## (AGAINST RESPIRATOR DEFENDANT 3M COMPANY A/K/A MINNESOTA MINING & MANUFACTURING COMPANY ONLY)

237.    All of the allegations contained in the previous paragraphs are realleged herein.

238.    The Respirator Defendant affirmatively represented its masks and/or respirators to be safe and effective protection against asbestos dusts in its advertising, promotional and safety materials, and information disseminated to employers and end-users like Plaintiff ALLAN WATSON.

239.    The Respirator Defendant promoted and marketed said masks and/or respirators as providing respiratory protection against asbestos dusts when the purported benefits were unfounded.

240.    The Respirator Defendant's promotional and safety materials and representations constitute affirmations, promises and descriptions, which became part of the basis of the bargain and created an express warranty that said masks and/or respirators should confirm to the Respirator Defendant's affirmations or promises.

241.    At the time that Plaintiff ALLAN WATSON and Plaintiff's employer paid for said masks and/or respirators, the Respirator Defendant's express warranties were not true and said masks and/or respirators did not provide protection against asbestos dusts, were not safe, and were not reasonably suitable and fit for use around asbestos as advertising and represented by the Respirator Defendant.

124

242.  The foregoing statements, descriptions and misrepresentations caused Plaintiff to suffer ascertainable losses in that he and his employer purchased said masks and/or respirators without knowing the true and complete risks and benefits of said masks and/or respirators as they relate to providing protection against the inhalation and absorption of asbestos dusts.

243.  Plaintiff ALLAN WATSON would not have used said masks and/or respirators had Plaintiff known the true and complete risks inherent with said masks and/or respirators.

244.  As a proximate result of the Respirator Defendant's breach of express warranty, Plaintiff ALLAN WATSON developed mesothelioma and suffered all damages as set forth above.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

### COUNT XX
### BREACH OF IMPLIED WARRANTY
### (AGAINST RESPIRATOR DEFENDANT 3M COMPANY A/K/A MINNESOTA MINING & MANUFACTURING COMPANY ONLY)

245.  All of the allegations contained in the previous paragraphs are realleged herein.

246.  At all relevant times herein, the Respirator Defendant marketed, tested, manufactured, promoted, distributed, and sold its masks and/or respirators for use by the public at large, including Plaintiff ALLAN WATSON.  The Respirator Defendant knew the uses for which its masks and/or respirators were intended and impliedly warranted

said products to be of merchantable quality, safe and fit for the uses the Respirator Defendant marketed.

247.    Plaintiff ALLAN WATSON and Plaintiff's employer reasonably relied on the skill and judgment of the Respirator Defendant, and as such, the implied warranty in using the masks and/or respirators when working with or around asbestos dusts.

248.    Contrary to the implied warranty, said masks and/or respirators were not of merchantable quality or safe or fit for their intended use around asbestos dusts, which rendered the masks and/or respirators unreasonably dangerous and unfit for the purpose for which they were intended to be used.

249.    As a proximate result of the Respirator Defendant's breach of implied warranty, Plaintiff ALLAN WATSON developed mesothelioma and suffered all damages as set forth above.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

## COUNT XXI
### FRAUDULENT CONDUCT MALICE AND GROSS NEGLIGENCE
### (AGAINST RESPIRATOR DEFENDANT 3M COMPANY A/K/A MINNESOTA MINING & MANUFACTURING COMPANY ONLY)

250.    All of the allegations contained in the previous paragraphs are realleged herein.

251.    The Respirator Defendant had a duty to refrain from gross negligence, fraud and/or malicious acts or omissions which would harm Plaintiff ALLAN WATSON.

252.    The Respirator Defendant committed one or more of the following acts or omissions amounting to fraudulent misconduct, malice, and gross negligence:

126

a.  intentionally or with gross negligence for the safety of Plaintiff ALLAN WATSON manufactured, sold, and distributed masks and/or respirators inadequate to protect against airborne asbestos dusts, even though it was completely foreseeable and could or should have been anticipated that persons such as Plaintiff would wear the masks and/or respirators while working with or around airborne asbestos dusts;

b.  intentionally or with gross negligence for the safety of Plaintiff ALLAN WATSON designed, manufactured, marketed, sold and distributed defective masks and/or respirators which were unreasonably dangerous when used in the manner for which they were marketed and intended to be used;

c.  intentionally or with gross negligence for the safety of Plaintiff ALLAN WATSON failed to provide any or adequate warnings to persons using its masks and/or respirators believing them to sufficiently protect against the inhalation or absorption of asbestos fibers;

d.  intentionally or with gross negligence for the safety of Plaintiff ALLAN WATSON failed to provide any or adequate instructions concerning the limitations and inadequacies of its masks and/or respirators to protect against asbestos dust, including specific instructions on how to avoid using said masks and/or respirators while working with or around airborne asbestos dust;

127

e.    intentionally or with gross negligence for the safety of Plaintiff ALLAN WATSON failed to conduct tests to determine the limitations and inadequacies of its masks and/or respirators in protecting against the inhalation and absorption of asbestos dusts in order to determine the hazards to which persons such as Plaintiff might be exposed while working with and around Defendants' Products;

f.    intentionally or with gross negligence for the safety of Plaintiff ALLAN WATSON failed to adequately label, warn, package, market or distribute its masks and/or respirators in a reasonable manner which would minimize or eliminate the penetration of asbestos dust fibers through the masks and/or respirators, thereby adding to the exposure of Plaintiff and others similarly situated; and

g.    intentionally or with gross negligence for the safety of Plaintiff ALLAN WATSON failed to take adequate steps to remedy the above failures including, but not limited to: (1) failure to recall the masks and/or respirators; (2) ongoing failure to conduct research to determine the masks' and/or respirators' limitations, capabilities and efficiency; and (3) failure to promptly remedy the inadequacies and shortcomings of the masks and/or respirators to or to warn the end user of same.

128

253. As a direct and proximate result of one or more of the foregoing actions and/or omissions of the Respirator Defendant, Plaintiff ALLAN WATSON was exposed to asbestos, contracted mesothelioma and has suffered injuries, illnesses, disabilities and damages as described herein despite his continued and proper use of the Respirator Defendant's masks and/or respirators, which Defendant claimed would protect Plaintiff against asbestos dust exposure.

254. The Respirator Defendant's actions, as stated herein, constitute a flagrant disregard for the rights and safety of Plaintiff and by engaging in such actions, the Respirator Defendant acted with gross negligence, fraud, recklessness, willfulness, wantonness and/or malice and should be held liable in punitive and exemplary damages to Plaintiff ALLAN WATSON.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

**COUNT XXII**
**FRAUD**
**(AGAINST DEFENDANTS BARRETTS MINERALS INC., BAYER CONSUMER CARE HOLDINGS LLC f/k/a BAYER CONSUMER CARE LLC f/k/a MSD CONSUMER CARE, INC., for its Dr. Scholl's line of products, BAYER HEALTHCARE LLC, a subsidiary of BAYER AG, for its Dr. Scholl's line of products, BAYER SAMSON II LLC a/k/a and d/b/a DR. SCHOLL'S LLC, BLOCK DRUG COMPANY, INC. (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY), BLOCK DRUG CORPORATION (sued individually and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY), BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), BRENNTAG SPECIALTIES LLC f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), CHATTEM, INC. a subsidiary of SANOFI-AVENTIS U.S. LLC (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY**

129

a/k/a THE GOLD BOND COMPANY), COLGATE-PALMOLIVE COMPANY
(sued individually and as successor-in-interest to THE MENNEN COMPANY) for
its Cashmere Bouquet line of products, COSMETIC SPECIALTIES, INC. (sued
individually and formerly d/b/a G&G SPECIALTY PRODUCTS CO.), DAVION
INC. and its HABA DIVISION a/k/a HABA-DAVION for its DG line of products,
DOLGENCORP, LLC for its DG line of products, DR. SCHOLL'S LLC a/k/a
BAYER SAMSON II LLC, HIMMEL MANAGEMENT CO. LLC a/k/a HIMMEL
GROUP formerly d/b/a MARTIN HIMMEL, INC. (sued individually and as
successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to
THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD
BOND COMPANY), MERCK & CO., INC., for its Dr. Scholl's line of products,
PERRIGO COMPANY for its Equate line of products, PREMIER BRANDS OF
AMERICA INC. for its DG line of products, SCHOLL'S WELLNESS COMPANY
LLC, SPECIALTY MINERALS INC. (sued individually and as a subsidiary of
MINERALS TECHNOLOGIES INC.), WALMART INC. for its Equate line of
products, and WHITTAKER CLARK & DANIELS, INC.)

255.    All of the allegations contained in the previous paragraphs are realleged

herein.

256.    **Fraudulent or intentional misrepresentation**: Defendants are liable for

their fraudulent or intentional misrepresentations.

a.    First, each of these Defendants, via its employees, agents, advertisements,

or any other authorized person or document, represented that certain material facts were

true when they were not.    The specific identities of these employees, agents,

advertisements, or any other authorized person or document are maintained in

Defendants' records.    Such records remain in the exclusive control of Defendants

pursuant to Defendants' respective document-retention policies.    While Plaintiff does not

currently know all of the specific advertisements, or the names of all of the employees,

agents, or any other authorized person who made the representations, Plaintiff will have

access to this information once discovery has commenced and will be able to specifically

name the advertisements as well as the employees, agents, or any other authorized

persons.

b.      Second, Defendants represented that the products they manufactured, supplied, or specified for use were not hazardous to humans. These representations were made before and during the years that Plaintiff and his family members purchased and was Plaintiff was exposed to asbestos from Defendants' Products. Such representations were made either directly to Plaintiff and his family members, or to a third party intending and reasonably expecting that the substance of those representations would be repeated to Plaintiff and his family members.

c.      Third, Defendants knew that the representations were false when they made them, or they made the representations recklessly and without regard for their truth.

d.      Fourth, Defendants intended that Plaintiff and his family members, and/or the same class of person as Plaintiff and his family members, rely on the representations or their substance.

e.      Fifth, Plaintiff and his family members reasonably relied on Defendants' representations or the substance of these representations.

f.      Sixth, Plaintiff ALLAN WATSON developed mesothelioma.

g.      Seventh, Plaintiff's reliance on those representations was a substantial factor in causing Plaintiff ALLAN WATSON's mesothelioma and the resulting damages thereto.

257.    **Negligent Misrepresentations**: Defendants are liable for their negligent misrepresentations.

a.      First, each of these Defendants represented as true certain statements, misrepresentations, and/or omitted facts that were so misleading (e.g., misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific

131

relationship or transaction as between each Defendant, Plaintiff, and his family members. Specifically, Defendants stated that their products could be used safely while concealing that they were in fact lethal because they contained and released asbestos fibers.

      b.    Second, Defendants (i) had exclusive knowledge of material facts not known to Plaintiff and his family members (as set forth above), (ii) actively concealed those material facts from Plaintiff and his family members, (iii) made partial representations but also suppressed and/or omitted material facts, and/or made misrepresentations as set forth above, and (iv) made factual representations, but did not disclose material facts which qualified those representations, and therefore were misrepresentations. Such nondisclosures and/or omissions of facts included Defendants representing their products as safe when used as intended and as fit for the particular purpose for which they were marketed, while not disclosing the material facts that these products contained asbestos that would become airborne during the intended and foreseeable use of the products, rendering them dangerous and unfit for their intended purpose.

      c.    Third, each Defendant entered into a relationship and/or a transaction with Plaintiff and his family members sufficient to give rise to a duty to disclose. For example, Plaintiff ALLAN WATSON and his family members used and Plaintiff otherwise encountered Defendants' products that were purchased either directly from Defendants, Defendants' authorized dealers or suppliers, or any other entity upon which Defendants derived a direct monetary benefit directly from Plaintiff's and his family members' purchase and use of the products. As for another example, Defendants directly advertised their products to those in Mississippi and elsewhere as a symbol of freshness,

132

cleanliness and purity. Defendants advertised and marketed their products as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Defendants compelled individuals through advertisements to dust themselves with the products to mask odors. Defendants derived direct monetary benefit from consumers' use of the products because Plaintiff and his family members decided to purchase and use Defendants' products.

d.      Fourth, Plaintiff and his family members did not know of the concealed material facts and/or misrepresentations.

e.      Fifth, Defendants intended to deceive Plaintiff and his family members by concealing material facts, and/or by making certain representations without disclosing and/or omitting additional material facts that would have materially qualified those representations.

f.      Sixth, Defendants failed to exercise ordinary care in making these omissions of material facts and misrepresentations.

g.      Seventh, had the omitted facts and misrepresentations been disclosed, Plaintiff and his family members reasonably would have behaved differently.

h.      Eighth, Plaintiff ALLAN WATSON developed mesothelioma.

i.      Ninth, each Defendant's negligent misrepresentations and omitted material facts were a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

258.    **Conspiracy to Commit Fraudulent or Intentional Misrepresentations**: Plaintiff hereby incorporates by reference the allegations of Paragraph 256 as if fully

stated herein.  Defendants are liable for their conspiracy to commit fraudulent or intentional material misrepresentations.

a.      First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent and/or intentional misrepresentations, and omitted material facts against Plaintiff ALLAN WATSON and his family members, and/or the same class of persons as Plaintiff and his family members and intended for Plaintiff and his family members to rely on their fraudulent and/or intentional misrepresentations and omitted material facts.

b.      Second, Defendants agreed with their conspirators and intended that the fraudulent and/or intentional misrepresentations and omitted material facts be committed.

c.      Third, Plaintiff ALLAN WATSON and his family members relied on Defendants' fraudulent and/or intentional misrepresentations and omitted material facts.

d.      Fourth, Plaintiff ALLAN WATSON developed mesothelioma.

e.      Fifth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

259.    **Conspiracy to Commit Negligent Misrepresentations**: Plaintiff hereby incorporates by reference the allegations of Paragraph 257 as if fully stated herein. Defendants are liable for their conspiracy to commit negligent misrepresentations.

a.      First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit negligent misrepresentations against Plaintiff ALLAN WATSON and his family members, and/or the same class of persons as Plaintiff and his family members.

134

b.      Second, Defendants agreed with their conspirators and intended that the negligent misrepresentations be committed.

c.      Third, Plaintiff ALLAN WATSON developed mesothelioma.

d.      Fourth, each Defendant's participation in the conspiracy and negligent misrepresentations were a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

260.    **Knowledge of Hazards:**  At all times pertinent hereto, Defendants owed Plaintiff ALLAN WATSON a duty to abstain from injuring his person, property, or rights.  In violation of that duty, these Defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Plaintiff.   Such acts and omissions more specifically were (i) suggestions of fact which were not true and which the Defendants did not believe to be true, (ii) assertions of fact that were not true, which the Defendants had no reasonable ground for believing to be true, and (iii) the suppression of material facts when a duty existed to disclose them, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of Plaintiff's rights.

261.   Since 1924, all of the Defendants have known and been in possession of true material facts (consisting of medical and scientific data and other knowledge) which clearly indicated that the asbestos-containing products referred to herein were and are hazardous to the health and safety of Plaintiff, and others similarly situated.  Defendants engaged in the following acts and omissions:

a.      Did not label any of the aforementioned asbestos-containing products as to the hazards of said products to the health and safety of Plaintiff ALLAN WATSON, and

135

others in his and his family members' positions using these products when the knowledge

of such hazards was existing and known to Defendants, and each of them, since 1924. By

not labeling said products as to their said hazards, Defendants, and each of them, caused

to be suggested as a fact to Plaintiff and his family members that it was safe for them to

use said products, when in fact these things were not true and Defendants did not believe

them to be true.

      b.     Suppressed information relating to the danger of using the aforementioned

products by requesting the suppression of information to Plaintiff and his family

members, Plaintiff's and his family members' classes of persons, and the general public

concerning the dangerous nature of the aforementioned products to all persons including

users, bystanders and household members, by not allowing such information to be

disseminated in a manner which would give general notice to the public and knowledge

of the hazardous nature thereof when Defendants were bound to disclose such

information.

      c.     Sold the aforementioned products to the public, including Plaintiff and his

family members, and others in Mississippi and other states without advising them of the

dangers of use of said products to Plaintiff and to those persons' household members,

when Defendants knew of such dangers, as set forth herein and above, and had a duty to

disclose such dangers. Thus, Defendants caused to be positively asserted to Plaintiff and

the public that which was not true and which Defendants had no reasonable ground for

believing to be true, in a manner not warranted by the information possessed by said

Defendants, and each of them, to wit, that it was safe for Plaintiff and his family

136

members to use said products causing Plaintiff's exposures, and Defendants' asbestos-containing products did not pose a risk of harm.

d.      Suppressed and continue to suppress from everyone, including Plaintiff, medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council, the results of a study conducted among tremolite, talc and slate workers.   The study indicated that the talc was a hydrous calcium magnesium silicate, being 45% talc and 45% tremolite, and the National Safety Council stated, "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicéte of magnesium." in the September 1935 issue of National Safety News, in an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson.  The article reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleges exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

e.      Belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute

(ATI), and other industry organizations, including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of danger to users of the aforementioned products for and on behalf of Defendants, and each of them, thereby misleading Plaintiff and his family members to Plaintiff's prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times regarding (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiff at this time.

      f.     Knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at the Raybestos-Manhattan plants in Manheim and Charleston, South Carolina. This information was disseminated through the ATI and other industry organizations to all other Defendants and each of them herein.  Between 1942 and 1950, Defendants, and each of them knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein. Thereby, Defendants suggested as material facts that which is not true and disseminated other facts likely to and which did mislead Plaintiff for want of communication of true facts, which consisted of the previously described medical and scientific data and other

138

knowledge, by not giving Plaintiff true material facts concerning such knowledge of dangers when Defendants were bound to disclose them.

g.    Failed to warn Plaintiff, his family members, and others similarly situated regarding the nature of Defendants' asbestos-containing products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22 talcum products analyzed have a.. .fiber content. . . averaging 19%. The fibrous-material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits.   Unknown significant amounts of such material in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J.350 (1968).] Defendants failed to warn Plaintiff and others similarly situated that their asbestos-containing products are, among other things, dangerous when breathed and cause pathological effects without noticeable trauma, although Defendants possessed knowledge that such products were dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose this information.

h.    Concealed from Plaintiff ALLAN WATSON and others similarly situated the true nature of his exposures, the fact that Defendants knew that exposure to respirable asbestos meant that Plaintiff would inhale this asbestos, significantly increasing his risk of developing asbestosis, lung cancer, and mesothelioma; that Plaintiff that had in fact been exposed to respirable asbestos; that the products to which Plaintiff was exposed would cause pathological effects in the human body without noticeable or perceptible

139

trauma to warn him of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information.

      i.     Failed to provide information to the public at large and buyers, users and physicians of Plaintiff for the purpose of conducting physical examinations of anyone whom came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose and treat individuals coming into contact with asbestos, in that the materials to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons, including Plaintiff, as to the dangers and risk of harm to which they were exposed.

      j.     Affirmatively misrepresented that asbestos-containing products were safe to use and handle, when Defendants knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

      262.     Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, the said Defendants, and each of them, having such knowledge, knowing Plaintiff ALLAN WATSON did not have such knowledge and Plaintiff would breathe such asbestos from Defendants' Products innocently, was done falsely and fraudulently and with full intent to induce Plaintiff to be in a dangerous environment and to cause him to remain unaware of the true material facts.

**COUNT XXIII**
**BASIS FOR PUNITIVE DAMAGES**

      263.     All of the allegations contained in the previous paragraphs are realleged herein.

140

264.    **Malice, Oppression, and/or Fraud**: Defendants are liable for punitive damages because they engaged in the conduct that caused Plaintiff harm with malice, oppression, or fraud.

a.    First, these Defendants committed malice in that they acted with intent to harm when they caused Plaintiff ALLAN WATSON's asbestos exposures, and/or because their conduct was despicable and/or was done with a willful and knowing disregard of the rights and safety of others.

b.    Second, these Defendants committed oppression in that their conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of his rights.

c.    Third, the Defendants committed fraud in that they intentionally and fraudulently concealed and misrepresented material facts and did so intending to harm Plaintiff, or with reckless disregard for whether their fraud would harm Plaintiff.

265.    These Defendants' conduct constituting malice, oppression, and fraud was committed by, authorized by, and adopted by one or more officers, directors, and managing agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

## CONCLUSION

266.    Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

267.    As a direct and proximate result of all the Defendants' breaches of their duties to the Plaintiff as delineated in all counts above, Plaintiff ALLAN WATSON has sustained and will sustain in the future the asbestos-related injuries, illnesses, disabilities

and damages set forth above including, but not limited to, pain and suffering, the undergoing of medical treatment and medical expenses, along with past and future disability; Plaintiff ALLAN WATSON has sustained past and future impairment of wage-earning capacity, lost wages, and diminution of quality and enjoyment of life, including, but not limited to, mental anguish, fear, and severe emotional distress associated with knowing that there is no known cure of the asbestos-related diseases and illnesses which Plaintiff ALLAN WATSON has suffered.

268.    In breaching their duties to the Plaintiff, as described above, the Defendants have acted intentionally, with gross negligence, recklessly, maliciously or wantonly in that the Defendants knew or should have known through data available to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended or foreseen by the Defendants, and that their aforesaid breaches of duty would result in the complained of injuries, illnesses, disabilities and damages to Plaintiff, thus entitling Plaintiff to recover punitive or exemplary damages for the Defendants' outrageous conduct as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

Dated: April 1, 2022.

Respectfully submitted,

_____
CORBAN GUNN, PLLC
Corban Gunn (MS Bar No. 101752)
P.O. Box 1466
Biloxi, Mississippi 39533
Telephone: (228) 284-6805
Facsimile: (228) 284-6806
corban@corbangunn.com

And

**SIMON GREENSTONE PANATIER, PC**
Holly C. Peterson (*pro hac vice pending*)
Texas Bar No. 24046623
1201 Elm Street, Suite 3400
Dallas, TX 75270
Telephone: (214) 276-7680
Facsimile: (214) 276-7699
hpeterson@sgptrial.com

**ATTORNEYS FOR PLAINTIFF**