UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


ROBIN A. WEBB, EXECUTRIX OF THE
ESTATE OF ALLAN WATSON AND HIS
WRONGFUL DEATH BENEFICIARIES                                        PLAINTIFFS

V.                                              CIVIL ACTION NO. 1:22-CV-145-KHJ-MTP

3M COMPANY, ET AL.                                                  DEFENDANTS

ORDER

Before the Court is Plaintiff Allan Watson's Motion to Remand. [242]. For the

reasons below, the Court denies the motion.

I.      Facts and Procedural History

This case arises from the injury and now death of Allan Watson due to

asbestos exposure throughout his life. Compl. [1-1] ¶ 122, [265]. Watson alleged

much of his exposure occurred during his service in the United States Navy from

1960 to 1964 and his employment for Ingalls Shipyard in Pascagoula, Mississippi

from 1966 to 2001. *Id.* ¶ 122(e), (f).

For the Navy, Watson served as an Aviation Electronics Technician on the

USS Saratoga. *Id.* That job included removing, repairing, and installing various

electronics such as radios and receivers. *Id.* Watson alleged that position required

him to work with an extensive list of asbestos-containing products. *Id.*

Watson then worked for Ingalls Shipyard in several roles during the

construction of naval vessels. *Id.* He had similar duties as he did for the Navy in

control rooms and engineering spaces of naval vessels. *Id.* Watson worked on over

forty naval vessels during his employment for Ingalls and likewise alleged the position required him to work closely with another extensive list of asbestos-containing products. *Id.* Watson alleges his long-term asbestos exposure led him to develop mesothelioma and other injuries. *Id.* ¶ 124.

On April 18, 2022, Watson filed this action in the Circuit Court of Jackson County, Mississippi, against 3M Company and over one-hundred other defendants asserting numerous state law claims. [1-1]. One of those Defendants, Lockheed Martin Corporation, timely removed the case on July 10 pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a). [1]. Six other Defendants, including John Crane, Inc. ("JCI"); Alfa Laval Inc.; Unisys Corporation ("Unisys"); Eaton Hydraulics LLC ("Eaton"); and Rockwell Collins, Inc. ("Rockwell") (collectively with Lockheed Martin, "Removing Defendants") filed Joinders in Lockheed Martin's Notice of Removal asserting their rights to removal under the same statute. [15], [16], [30], [64], [104], [162].

Unfortunately, Watson passed away due to the mesothelioma and other injuries alleged in this action. [298], Ex. 2. Defendant Lockheed Martin accordingly filed a suggestion of death on July 19, 2022. [19].

In the time between Watson's death and the suggestion of death, Watson's attorneys moved to remand the case back to Jackson County Circuit Court on July 11, 2022, arguing that Removing Defendants failed to establish removal was proper. [242]. Removing Defendants filed separate responses opposing Watson's motion. [271], [273], [274], [278]. On Plaintiff's Motion to Substitute Party [299], the Court

allowed Robin Webb, executrix of Watson's estate, and Watson's wrongful death beneficiaries to substitute as Plaintiffs on August 24, 2022. [316].

II.    Standard

The federal officer removal statute allows a defendant to remove any civil action brought against "[t]he United States or any agency thereof or any officer (or person acting under that officer) of the United States in an individual capacity, for or relating to any act under color of such office…" *Box v. PetroTel, Inc.*, 33 F.4th 195, 199 (5th Cir. 2022) (quoting 28 U.S.C. § 1442(a)(1)). The removing defendant has the burden of showing removal is proper. *See id.* (citing *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc)).

Once a defendant removes an action to federal court, the plaintiff may move to remand. 28 U.S.C. § 1447(c). Generally, any doubts about whether removal is proper should be resolved against federal jurisdiction. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). But unlike the general removal statute, the Court must broadly construe the federal officer removal statute in favor of a federal forum. *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021) (citation omitted).

III.   Analysis

Watson sought to remand this action to state court for two main reasons: (1) Removing Defendants failed to establish removal was proper by not providing evidence showing they can meet the requirements for federal officer removal; and (2) they cannot meet those requirements anyway. [243] at 2-3. As to defendant Alfa

Laval, he also argues that joinder in the removal was untimely. Removing

Defendants responded separately with similar arguments: (1) Watson's counsel

improperly filed the motion to remand after Watson died, but before the Suggestion

of Death on the record; (2) Defendant Lockheed Martin met the requirements of a

notice of removal; and (3) Removing Defendants met the requirements for federal

officer removal.

   A.  Notice of Removal

Watson first argues Removing Defendants failed to establish removal was

proper by not providing evidence. [243] at 3-4. Defendant JCI responds on behalf of

all Removing Defendants that Watson misstates the requirements for a notice of

removal. [278] at 14.

A notice of removal must give "a short and plain statement of the grounds for

removal." 28 U.S.C. § 1446(a). That statement does not require the removing party

to provide evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S.

81, 84 (2014) (reversing the Tenth Circuit for abuse of discretion in denying review

of district court's erroneous remand for want of evidentiary submission). The notice

need only include a "plausible allegation" that a defendant has adequate grounds

for removal. *Id.* at 89 (plausible allegation that amount in controversy exceeded

$75,000 sufficient for removal based on diversity jurisdiction). Defendants need only

provide evidence establishing grounds for removal "when the plaintiff contests, or

the court questions, the defendant's allegation." *Id.*

In its Notice of Removal, Lockheed Martin alleged removal is proper under §

1442(a)(1) because it acted as an officer or agent of the United States in

manufacturing its alleged asbestos-containing product for the Navy. [1], ¶ 12.

Lockheed Martin also alleged facts pertaining to each requirement of § 1442. *Id.* ¶

4-8. Those are plausible allegations meeting the "short and plain statement"

requirement of § 1446(a), and the removal statute required no more. *See Burch v.*

*JPMorgan Chase Bank, N.A.*, 821 F. App'x 390, 391 (5th Cir. 2020) (defendant was

not required to submit evidence to establish amount in controversy). And Watson's

"challenge," presenting no evidence of his own, is insufficient to require Removing

Defendants to provide their own evidence. *See Carter v. Westlex Corp.*, 643 F. App'x

371, 375 (5th Cir. 2016) (per curiam) (affirming district court's denial of remand

where plaintiff introduced no evidence themselves).

B.  Federal Officer Removal Requirements

Watson next argues Removing Defendants cannot meet the substantive

requirements of the federal officer removal statute. A removing defendant must

show: (1) it is a "person" within meaning of the statute, (2) it asserts a "colorable

federal defense," (3) it "acted under" a federal officer's directions, and (4) the

charged conduct is connected or associated with an act pursuant to a federal

officer's directions. *Latiolais*, 951 F.3d at 296.

Watson does not dispute the first requirement but argues the Removing

Defendants cannot meet the other three: (1) Removing Defendants do not have a

"colorable federal defense"; (2) they did not "act under" the direction of a federal

officer; and (3) the acts were not "connected or associated with" Watson's asbestos-related injuries. [243] ¶ 5-16. In separate responses, Defendants counter similarly: (1) they have colorable defenses (2) they acted pursuant to a federal officer's direction, and (3) their acts are connected or associated with Watson's injuries. [273] at 4-8, [274] at 1, [278] at 12-17.

### 1.  Colorable Federal Defense

Watson first argues Removing Defendants do not have a "colorable federal defense" to any of his claims because they cannot rely on their asserted government contractor or derivative sovereign immunity defenses. Removing Defendants respond that they can rely on either defense or both for at least one claim, if not all. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017) (citing 28 U.S.C. § 1442(a)) ("the defense need only apply to one claim to remove the case").

A colorable defense need not be "clearly sustainable, as Section 1442 does not require a federal official or person acting under him to win his case before he can have it removed." *Latiolais*, 951 F.3d at 296 (citation and internal quotation marks omitted). An asserted federal defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Id.* (citation omitted). With that in mind, the Court first considers the colorability of Removing Defendants' asserted government contractor defense.

### i.  Government Contractor Defense

This defense may immunize a contractor who supplies military equipment to the government from liability for design defects where (1) the United States

6

approved reasonably precise specifications (2) the equipment conformed to those

specifications; and (3) the supplier warned the United States about the dangers in

the use of the equipment known to the supplier but not to the United States. *Boyle*

*v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).

Watson mainly argues Removing Defendants cannot meet the test because

their duties under any U.S. government specifications were not "precisely contrary"

to their duties under state tort law. The Fifth Circuit has rejected that argument

and held that the test includes no element requiring a conflict between federal

interests and state law. *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 353 (5th Cir.

2010) (district court erred in instructing the jury on that issue). If the *Boyle*

requirements are met, they supersede state law. *Id* (citation omitted).

Even so, Watson argues Removing Defendants cannot meet any of the *Boyle*

requirements. First, he argues they did not provide the specification or contract

requiring the use of asbestos in the products they supplied to the Navy. [243] at 8.

But the "colorable" standard does not require that. *See Latiolais*, 951 F.3d at 297

(finding defendant asserted a colorable government contractor defense based on an

affidavit and deposition testimony). Even so, JCI provided the very specifications

requiring use of asbestos in its gasket material. [15-2], [278-2].

JCI also provided an affidavit from retired Rear Admiral David Sargent

alleging the Navy drafted, approved, and maintained specifications for *any*

equipment intended for use aboard Navy ships. [278-1]. Along with JCI's gasket

material, the products Watson alleges contained asbestos include Lockheed

7

Martin's missile systems [1], ¶ 1; Unisys's Waterbury Pumps [16], ¶ 6; Eaton's

Vickers Pumps [30], ¶ 6; Rockwell's avionics equipment [64], ¶ 12; and Alfa Laval's

oil purifiers [104], ¶ 8. The Government contracted Removing Defendants to

manufacture those products specifically to use on Navy ships. Removing Defendants

allege, and Sargent confirms, that the Navy provided or at least approved those

specifications. That is sufficient for the first requirement at least to assert a

"colorable" government contractor defense. *See Zeringue v. Crane Co.*, 846 F.3d 785,

791 (5th Cir. 2017), *overruled on other grounds*, (relying on a similar affidavit from

Sargent to establish the first *Boyle* requirement).

Watson next alleges Removing Defendants failed to "conform to" such

specifications but does not actually argue that point. [243] at 8. Even if he did,

Sargent's affidavit also states, "[e]quipment or material could not have been

installed aboard Navy vessels unless [the Navy first determined the equipment

was] in conformity with all applicable Navy specifications." [278-1] at 13. Removing

Defendants must have conformed with the Navy's specifications for the Navy to use

their products. Like the first requirement, that at least meets "colorability." *See*

*Zeringue*, 846 F.3d at 792 (relying on the same statement from the same affiant for

the conformity requirement).

Finally, Watson argues Removing Defendants failed to warn the Navy about

the asbestos dangers associated with their products. But his only argument is that

they failed to provide evidence that they can satisfy that requirement. Again,

Removing Defendants were not required to provide such evidence. *See Carter*, 643 F. App'x at 375.

Even so, the Fifth Circuit has held the third element to only require a government contractor to warn the government of dangers "known to the contractor but not to the United States." *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1487 (5th Cir. 1989). To that point, JCI also presented the declaration of Dr. Samuel Forman. [278-37]. Dr. Forman discusses how the Navy was a "leader in the field of occupational medicine relating to… asbestos [] exposure" by at least the 1940s. *Id.* at 12. Watson did not serve in the Navy until 1960. Based on Dr. Forman's statement, the Navy likely knew at least as much if not significantly more about the dangers of asbestos than Removing Defendants. *See Latiolais*, 951 F.3d at 298 (finding requirement satisfied where federal government knew more about asbestos-related hazards and safety measures than contractor).

Removing Defendants sufficiently alleged a colorable government contractor defense. Though that is enough to satisfy the "colorable federal defense" prong, the Court now considers Watson's argument against Removing Defendants' asserted derivative sovereign immunity defense.

ii.      Derivative Sovereign Immunity

Watson contends Removing Defendants cannot assert a colorable "derivative sovereign immunity" defense either. He argues: (1) the immunity is not separate and distinct from the government contractor defense and (2) even if it is, Removing Defendants cannot meet it. [243] at 11-12.

The United States Supreme Court first recognized derivative sovereign immunity when it rejected a landowner's attempt to hold a contractor liable under state law where the contractor damaged his land by constructing dikes for the government. *See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 60 (1940). The Court has since treated that immunity as separate and distinct from *Boyle* in every way except specifically saying it is separate, setting out a distinct two-prong test. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166-167. Although district courts have sometimes referred to the defenses interchangeably in the past,[1] the Fifth Circuit also analyzes *Yearsley* as its own defense separate from *Boyle*. *See Taylor Energy Co., LLC v. Luttrell*, 3 F.4th 172, 175 (5th Cir. 2021) (applying the two-prong test). The doctrines may consider similar facts in application, but those Supreme Court and Fifth Circuit precedents are undeniable. Watson's first argument that derivative sovereign immunity is not separate from the government contractor defense is invalid.

Watson regardless argues Removing Defendants do not have a colorable derivative sovereign immunity defense. To assert the defense, a contractor must show his actions were (1) authorized and directed by the U.S. Government and (2)

---

[1] *See Perkins v. U.S.* 2009 WL 2602433, at *2 (S.D. Miss August 21, 2009) (using *Boyle's* elements for *Yearsley* analysis); *Bynum v. General Motors Corp.*, 599 F. Supp. 155, 157 (N.D. Miss 1984) (citing *Yearsley* when discussing the government contractor defense); *Weisler Louisiana Commerce & Trade Assn. v. United States*, 2011 WL 13228169, at *3-4 (S.D. Miss December 28, 2011) (describing *Yearsley* as "expanded in *Boyle*"); *Loper v. Rapp Hydema U.S., Inc.*, 2010 WL 4063486, at *2 (S.D. Miss October 15, 2010) (describing government contractor defense as based on derivative sovereign immunity).

validly conferred by Congress. *Luttrell*, 3 F.4th at 175 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016).

First, to be authorized and directed by the Government means the contractor's actions "comply with federal directives." *Luttrell*, 3 F.4th at 175-176 (citation omitted). JCI submitted the Navy's specifications requiring it to use asbestos in its gasket material. And Sargent's affidavit said any product used on a Navy ship had to meet those specifications. It follows that JCI complied with the Navy's directives when it used asbestos in its gasket material. For removal purposes, this element is at least colorable. *See Luttrell*, 3 F.4th at 176 (element met where contractor "adhered to the Government's instructions").

Second, authority is validly conferred if "Congress had the authority to assign the contractor to complete that task." *Id.* (cleaned up) (citation omitted). "The Constitution explicitly grants Congress the power to make Rules for the Regulation of… naval Forces." *United States v. Kebodeaux*, 570 U.S. 387, 394 (2013) (citing U.S. Const. art. I, § 8, cl. 1) (internal quotation marks omitted). Under that broad power, it is at least colorable that Congress had the authority to provide specifications for naval shipbuilding and to assign that work to private contractors such as JCI and the other Removing Defendants.

Between the government contractor defense and derivative sovereign immunity, Removing Defendants have at least a "colorable" federal defense. Neither defense is "wholly insubstantial or frivolous" and Removing Defendants did not

assert them "solely [for] obtaining jurisdiction." *Latiolais*, 951 F.3d at 296. They

meet the second prong of the federal officer removal statute.

### 2. Acting Under to a Federal Officer's Directions

Watson next argues Removing Defendants did not "act under" the direction of

a federal officer. The words "acting under" are broad and must be "liberally

construed." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007)

(quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932). But "broad language is not

limitless." *Id.* The question is whether the "private contractor… help[s] the

Government to produce an item that it needs." *Id.* at 153-154.

The Supreme Court has considered contractors to be "acting under" federal

officers in similar circumstances. For example, in *Watson*, the Court found that a

contractor "acted under" federal officers when it used the Federal Trade

Commission's method of testing cigarettes. *See id.* at 153-154. It even analogized to

the Fifth Circuit's similar finding that another contractor "acted under" officers of

the Department of Defense when it manufactured "Agent Orange" to the

Department's specifications for military use in Vietnam. *See id.* (citing *Winters v.*

*Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399 (5th Cir. 1998), *overruled on*

*other grounds*). Like those contractors, Removing Defendants manufactured

products to Navy specifications. And Removing Defendants made those products for

the Navy to use on ships. Defendants "help[ed] the Government to produce item[s]

that it need[ed]." By acting under naval officers, Removing Defendants met this

prong.

3. Connected or Associated

Along with the other three prongs, the charged conduct must be "connected or associated with an act pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296.

Watson argues Removing Defendants cannot satisfy this element just because they denied their products contained asbestos. [243] at 16. The Fifth Circuit has already rejected a similar argument. *See Williams*, 990 F.3d at 860-861 (Lockheed Martin did not have to admit its products contained asbestos to assert federal officer removal). And the Supreme Court has held that a removing defendant "need not admit that he actually committed the charged offenses." *Willingham v. Morgan*, 395 U.S. 402, 408 (1969) (citation omitted).

Watson does not otherwise challenge Removing Defendants' ability to meet this element. Still, he alleges exposure to asbestos through products used during his service in the Navy and his employment with Ingalls Shipyard during construction of naval vessels. Removing Defendants allege those products included asbestos pursuant to Navy specifications. That is sufficient "association" or "connection" with an act under a federal officer's directions. *See Williams*, 990 F.3d at 859-860 (connection element met where Lockheed Martin alleged NASA issued specifications requiring use of asbestos in fuel tanks).

Removing Defendants have satisfied the requirements of § 1442. The Court now addresses Watson's argument that Defendant Alfa Laval's Joinder [104] in Lockheed Martin's Notice of Removal was one day late and therefore untimely.

13

C.  Timely Joinder

The 30-day removal period begins to run upon receipt by the defendant (through service or otherwise) of a copy of the initial pleading setting forth the claim for relief on which such action or proceeding is based. 28 U.S.C. § 1446(b)(1). For computing time, legal holidays are excluded from the 30-day period. Fed. R. Civ. P. 6(a)(6).

Alfa Laval was served on May 16, 2022. Memorial Day was on May 29, 2022. The legal holiday tolled the 30-day period from June 15 to June 16, when Alfa Laval filed its joinder. Alfa Laval's joinder in removal was therefore timely.

IV.   Conclusion

This Court has considered all arguments. Those it does not address in this Order would not have changed the outcome of its decision. For the reasons stated, this Court DENIES Mr. Watson's Motion to Remand [242][2].

SO ORDERED AND ADJUDGED this the 13th day of September, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE

---

[2]   Because the Court denied the motion on its merits, the Court does not decide whether Mr. Watson's counsel improperly filed the motion.